OPINION
{¶ 1} Defendant-appellant, Jeffrey D. Wood, appeals his conviction and sentence in the Preble County Court of Common Pleas for trafficking in marijuana, a felony of the fifth degree.
 {¶ 2} In May 2004, Paul Plaugher, Chief of Police for the Village of Camden, Ohio, determined that there was an illegal drug problem in his community. As a result, he contracted with North American Security Solutions ("NASS") to hire an undercover agent to make buys of illegal drugs in Camden.
 {¶ 3} NASS assigned Agent Daniel Mace to work undercover in Camden. Mace moved to Camden and took a job at a local grocery store. His objective was to blend into the community in an effort to make contacts so that he could make buys of illegal drugs.
 {¶ 4} On June 19, 2004, Agent Mace met Jeffrey D. Wood, the defendant-appellant in this case. On June 28, 2004, Mace went to appellant's residence and told him that he was having a barbecue later that evening. Appellant told Mace that he would probably stop by around 7:00 p.m., and asked Mace if he could bring anything. Mace responded that he could bring some marijuana if he had any.
 {¶ 5} Mace waited for appellant to arrive until 9:00 p.m. When appellant failed to show up, Mace walked outside to go to a bar. At that time, Mace saw appellant outside of his (appellant's) residence. Mace walked over to appellant, who explained that "he got caught up playing golf." Appellant invited Mace to go upstairs with him to his apartment.
 {¶ 6} Once inside, appellant pulled out what looked like a black coffee thermos and took out a baggie with a green leafy substance inside, which Mace suspected was marijuana. Mace observed appellant roll a marijuana cigarette and smoke it. Appellant then handed the marijuana cigarette to Mace, who "simulated" smoking it. Shortly afterwards, Sarah Koons stopped by appellant's apartment. She smoked a marijuana cigarette, and then offered it to Mace who declined, saying it made him sleepy.
 {¶ 7} At 11:15 a.m., appellant, Koons, and Mace went to a local bar to hang out and play pool. While there, Mace asked appellant if he could buy some marijuana. Appellant offered to sell him one-half ounce for $70. Mace paid appellant the first $20 for the marijuana after appellant told Mace he needed the money to buy drinks. About one hour later, appellant requested the remaining $50 of the marijuana's purchase price to buy more drinks.
 {¶ 8} Mace, appellant, and Koons eventually went to Mace's apartment to get something to eat. Afterwards, they went to appellant's apartment so that Mace could pick up the marijuana he had already purchased. When they arrived at appellant's apartment, appellant took out some marijuana from a desk drawer. Appellant weighed out a certain amount of marijuana on a scale and placed it in a clear plastic baggie. Appellant handed the baggie of marijuana to Mace, who placed it in his front pocket. Mace left appellant's apartment about 30 to 40 minutes later.
 {¶ 9} Mace returned to his residence and typed up his daily activity report. He placed the marijuana he had just purchased from appellant into an evidence bag and turned it over to Police Chief Plaugher. The undercover operation in Camden lasted for approximately four months, from June 2004 to September 2004. When the operation ended, appellant was one of nine persons arrested for trafficking in illegal drugs.
 {¶ 10} On May 3, 2005, appellant was indicted on one count of trafficking in marijuana in violation of R.C.2925.03(A)(1)(C)(3)(a), a felony of the fifth degree. He entered a not guilty plea to the charge. On July 25, 2005, appellant was tried by a jury on that charge. Following a two-day trial, appellant was found guilty.
 {¶ 11} After his conviction, appellant moved for a new trial, arguing that one of the jurors in his case knew several defense witnesses but had failed to disclose this fact during voir dire. The trial court denied the motion for a new trial without holding a hearing.
 {¶ 12} On October 7, 2004, the trial court sentenced appellant to 30 days in jail, a $250 fine, and a six-month driver's license suspension. The trial court allowed appellant to serve 100 hours of community service in lieu of jail time, and informed appellant that he could apply for driving privileges to enable him to go to work during his six-month suspension.
 {¶ 13} Appellant now appeals, raising six assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "THE TRIAL COUURT ERRED WHEN IT SUA SPONTE DISMISSED A QUALIFIED PROSPECTIVE JUROR, VIOLATING APPELLANT'S RIGHT TO A FAIR TRIAL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 16} Appellant argues the trial court abused its discretion when it sua sponte dismissed several prospective jurors without stating any reason for their dismissal. We disagree with this argument.
 {¶ 17} Initially, appellant did not object to the dismissal of the prospective jurors. In order to preserve an issue for appellate review, a party must object or otherwise bring the issue to the trial court's attention. See State v. Hancock,108 Ohio St.3d 57, 69, 2006-Ohio-160. Absent such an objection, the alleged error is deemed waived, unless the error constitutes "plain error," i.e., but for the error, the trial's outcome clearly would have been different. Id. In this case, the trial court did not commit any error, plain or otherwise, in sua sponte dismissing several of the prospective jurors. Id.
 {¶ 18} A trial court has broad discretion in determining a juror's ability to be impartial. State v. Dennis,79 Ohio St.3d 421, 427, 1997-Ohio-372. This court has held that Crim.R. 24 gives a trial court the authority to sua sponte dismiss a juror if the trial court determines that the juror is not impartial or is otherwise unsuitable for jury service. State v. Midwest PrideIV, Inc. (1998), 131 Ohio App.3d 1, 19. A trial court's decision to dismiss a juror will be reversed only if the court has abused its discretion. Id., citing Berk v. Matthews (1990),53 Ohio St.3d 161, 167. A trial court does not abuse its discretion unless its decision is unreasonable, arbitrary or unconscionable.Hancock, 108 Ohio St.3d at 77.
 {¶ 19} In this case, appellant himself concedes that the trial court "probably correctly dismissed" two of the three prospective jurors, namely, Ms. Berry and Mr. Tumbusch. But appellant argues that the trial court erred by not stating its reasons for dismissing them. However, the record of the voir dire proceedings demonstrates why the trial court dismissed these two jurors.
 {¶ 20} Berry admitted that she would not be able to approach the case fairly because of the negative consequences of drugs on her brother and herself. Tumbusch also admitted that his family has had "quite a bit" of a negative history with drug abuse. He also expressed doubts about the propriety of the jury system, stating that three-judge panels rather than juries should be used to decide cases. Although Tumbusch stated that he could still be fair despite his family's history with drug abuse, the trial court's decision to dismiss him as a potential juror did not amount to an abuse of discretion because the trial court was in the best position to judge the sincerity of Tumbusch's responses. See Midwest Pride IV, Inc., 131 Ohio App.3d at 20 (only the trial court has the opportunity to observe the demeanor of prospective jurors and evaluate, firsthand, the sincerity of their responses to questions asked during voir dire).
 {¶ 21} As for Mr. Gregg, the third prospective juror who was dismissed by the trial court, the record shows that Gregg knew appellant's family because his business had bought propane from appellant's family for "many years." Gregg also acknowledged that he had read a newspaper story about the case. Although Gregg testified that his business dealings with appellant's family would not affect his ability to be fair and impartial, the trial court was entitled to believe that his prior relationship with appellant's family may, indeed, have had a negative impact on his ability to decide the case in a fair and impartial manner. The trial court's decision on this matter is owed deference due to the trial court's ability to evaluate the sincerity of Gregg's response, firsthand. See Midwest Pride IV, Inc.,131 Ohio App.3d at 20.
 {¶ 22} In light of the foregoing, the trial court's sua sponte dismissal of prospective jurors Berry, Tumbusch, and Gregg cannot be considered an abuse of discretion. Furthermore, while the trial court did not expressly state its reasons for dismissing the three prospective jurors, those reasons are nevertheless apparent from the record. Appellant has not been materially prejudiced by the trial court's failure to expressly state its reasons for dismissing these jurors.
 {¶ 23} Appellant's first assignment of error is overruled.
 {¶ 24} Assignment of Error No. 2:
 {¶ 25} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED THE POTENTIAL JURORS TO BE CALLED OUT OF THE ORDER ORIGINALLY SET FORTH IN THE JURY LIST."
 {¶ 26} Appellant argues that his right to a fair trial was substantially prejudiced when the trial court replaced prospective jurors that it had dismissed with jurors who were not called in the sequential order set forth in the court's juror list. He argues that as a result of calling the prospective jurors out of order, one of the jurors called was a police officer. Appellant had this juror excused by using one of his preemptory challenges because he feared this juror would be biased in favor of the state. Appellant contends that had the jurors been called in the correct order, he would not have had to expend his peremptory challenge on this juror, and, as a result, a different jury would have been seated. He asserts that this different jury would have been more impartial than the one that was eventually seated. We find this argument unpersuasive.
 {¶ 27} Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant has the right to have a jury chosen from a fair cross section of the community.State v. Puente (1982), 69 Ohio St.2d 136, 138. In order to comply with the "fair cross section" requirement, a jury must be selected without the systematic or intentional exclusion of any cognizable group. State v. Buell (1985), 29 Ohio App.3d 215,217. However, "`[u]nless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, [a reviewing court] will not reverse a judgment because of minor and technical defects in jury-selection procedures.'" Puente,69 Ohio St.2d at 137-138.
 {¶ 28} In this case, the record establishes that the jurors were called out of order because of a failed communication between the bailiff and the deputy clerk of court. There was no "systematic or intentional exclusion of any cognizable group."Puente, 69 Ohio St.2d at 137-138. Additionally, appellant's assertion that a more impartial jury would have been selected had he not been forced to expend one of his peremptory challenges on removing from the jury a prospective juror who happened to be a police officer is mere speculation. Thus, he has failed to show any prejudice from this "minor and technical defect" in the jury selection process. Id.
 {¶ 29} Appellant's second assignment of error is overruled.
 {¶ 30} Assignment of Error No. 3:
 {¶ 31} "APPELLANT'S RIGHT TO A FAIR TRIAL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WAS VIOLATED WHEN A JUROR FAILED TO DISCLOSE THAT HE KNEW WITNESSES AND WHERE THE TRIAL COURT FAILED TO GRANT A NEW TRIAL AFTER SUCH RELATIONSHIP WAS DISCOVERED AND BROUGHT TO THE COURT'S ATTENTION."
 {¶ 32} Appellant argues that the trial court abused its discretion in overruling his motion for a new trial, without holding a hearing, after he submitted an affidavit stating that after his trial, he discovered that one of the jurors on his case, Eddie Mowen, knew several of the defense's witnesses, namely, Keisha McDavid, Michael Hale, and Lori Showalter. We disagree with this argument.
 {¶ 33} In evaluating a claim of juror misconduct, it must be determined (1) whether there was juror misconduct, and (2) if so, whether the misconduct materially affected the defendant's substantial rights. State v. Steele, Butler App. No. CA2003-11-276, 2005-Ohio-943 at ¶ 75, citing State v. Taylor
(1991), 73 Ohio App.3d 827, 833.
 {¶ 34} "The decision to grant or deny a motion for a new trial under Crim.R. 33 rests within the sound discretion of the trial court." State v. Blankenship (1995), 102 Ohio App.3d 534,556, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 76. "An appellate court may not disturb a trial court's decision denying a motion for a new trial absent an abuse of discretion."Blankenship, 102 Ohio App.3d at 556, citing State v. Shepard
(1983), 13 Ohio App.3d 117, 119.
 {¶ 35} Following his conviction, appellant moved for a new trial. In support of his motion, appellant filed his own affidavit, which stated as follows:
 {¶ 36} "Jeffrey Wood, being first duly sworn and cautioned states as follows: That misconduct occurred by one of the jurors, namely Eddie Mowen. After trial I discovered that Mr. Mowen knew three of the Defense witnesses. Mr. Mowen knew Michael Hale, Keisha McDavid and Lori Showalter. I have knowledge that Mr. Mowen spoke to Mr. Hale about the trial after it was over, and that he had personal relationships with Ms. McDavid and Ms. Showalter. During jury voire [sic] dire, all potential jurors were questioned about whether they knew any of the witnesses. Mr. Mowen did not disclose that he knew any of the witnesses for the Defense. The misconduct of this juror caused the jury to be unfairly persuaded and materially affected my substantial rights to a fair trial."
 {¶ 37} Initially, appellant concedes that Mowen did disclose that he knew "David" during the voir dire questioning, and that he was probably referring to "Keisha McDavid," when he did so. Furthermore, McDavid did not testify. As to Hale, appellant fails to give any indication in his affidavit of how Mowen knew Hale or what kind of relationship they had. Appellant states in his affidavit only that Mowen spoke to Hale "about the trial after
it was over[.]" (Emphasis added.) Appellant did state in his affidavit that he had a "personal relationship" with Showalter, although he offered no details.
 {¶ 38} One appellate court has indicated that when ruling upon a motion for a new trial, a trial court has discretion to discount self-serving affidavits executed by a defendant or his or her relatives. See State v. Wright, Erie App. No. E-03-054, 2004-Ohio-5228, at ¶ 57.
 {¶ 39} In this case, the trial court acted within its discretion in discounting appellant's self-serving affidavit alleging misconduct on the part of juror Mowen. Not only is appellant's affidavit self-serving, it is apparently based on hearsay testimony. Appellant does not assert that he has personal knowledge that Mowen knew these witnesses, but instead merely asserts that has "knowledge" of the facts he alleges in his affidavit.
 {¶ 40} Additionally, the testimony of Hale and Showalter had a limited impact on this trial. Hale, who was one of the managers at the grocery store where Agent Mace worked, testified that while he saw appellant smoke marijuana, he never saw him sell it. Hale also testified that on one occasion he drank eight to twelve beers with Mace. Showalter, who was a bartender, testified that appellant was "very upstanding," and that she had never heard anything about him selling drugs.
 {¶ 41} While the testimony of Hale and Showalter may have marginally bolstered appellant's credibility and marginally weakened Mace's, neither of these two witnesses provided any testimony about the transaction which led to appellant's trafficking charge. Furthermore, appellant offered no specifics on how Mowen knew Hale, and, likewise, offered no specifics in support of his allegation that Mowen had a "personal relationship" with Showalter.
 {¶ 42} In light of the foregoing, we conclude that the trial court did not abuse its discretion by overruling appellant's motion for a new trial without holding a hearing.
 {¶ 43} Assignment of Error No. 4:
 {¶ 44} "THE SUPPRESSION BY THE PROSECUTION OF EVIDENCE THAT MAY POSSIBLY BE FAVORABLE TO THE APPELLANT VIOLATES THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW."
 {¶ 45} Appellant argues that the prosecution failed to disclose evidence to them which may have been favorable to the defense, namely, a digital audio recording that was made by Agent Mace on the night of the alleged sale of marijuana. Specifically, he contends that "[a]t no time before trial did the prosecuting attorney provide a copy of the audio tape or an opportunity for [his] counsel to listen to the audiotape." We find this argument unpersuasive.
 {¶ 46} Crim.R. 16(B)(1)(a) states, in relevant part:
 {¶ 47} "* * * Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 48} "(i) Relevant written or recorded statements made by the defendant * * *, or copies thereof[.]"
 {¶ 49} In this case, the prosecutor disclosed the existence of the digital audio recording on July 7, 2005, more than two weeks before appellant's trial, which began on July 25, 2005. The prosecutor was not obligated to provide appellant with a copy of the digital audio recording. Instead, the prosecutor was only required to permit appellant "to inspect and copy" the digital recording. See Crim.R. 16(B)(1)(a)(i). Furthermore, there is nothing in the record to support appellant's claim that the prosecution did not provide appellant's defense counsel with the opportunity to listen to the audiotape or make a copy of it.
 {¶ 50} Appellant's fourth assignment of error is overruled.
 {¶ 51} Assignment of Error No. 5:
 {¶ 52} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE STATE TO CALL A WITNESS WHO WAS NOT LISTED IN THE DISCOVERY RESPONSE."
 {¶ 53} Appellant argues that the trial court abused its discretion when it permitted the state to call Doug Morgan as a rebuttal witness, since the state failed to provide the defense with Morgan's name in its discovery response. We disagree with this argument.
 {¶ 54} Crim.R. 16(B)(1)(e) provides, in pertinent part:
 {¶ 55} "Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial[.]"
 {¶ 56} "The criterion for determining whether the state should have provided the name of a witness called for rebuttal is whether the state reasonably should have anticipated that it was likely to call the witness, whether during its case in chief or in rebuttal." State v. Lorraine (1993), 66 Ohio St.3d 414, 423, citing State v. Howard (1978), 56 Ohio St.2d 328, 332-333.
 {¶ 57} At trial, appellant presented several witnesses who testified that Agent Mace did not simulate smoking marijuana, as Mace had said during his testimony, but instead, actually smoked and ingested it. The apparent purpose of the testimony of these witnesses was to discredit Mace's testimony. The prosecution called Dennis Morgan, who was Mace's supervisor at NASS, to rebut this testimony. Appellant objected on the grounds that the state had failed to provide him with Morgan's name in their discovery response. The prosecutor countered this argument by asserting that Crim.R. 16 does not require the disclosure of rebuttal witnesses. The trial court agreed with the prosecutor's argument and overruled appellant's objection.
 {¶ 58} To the extent that the prosecutor and the trial court were stating that the names of rebuttal witnesses never have to be supplied pursuant to Crim.R. 16(B)(1)(e) "since the state does not have to anticipate their need," we note that the Ohio Supreme Court rejected this same argument in Howard,56 Ohio St.2d at 332-333. In that case, the court stated:
 {¶ 59} "[W]e do not think that Crim.R. 16(B)(1)(e) should be as narrowly construed as the state suggests. [Foonote omitted.] The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial. The state should furnish upon a proper demand the names of all witnesses it reasonably anticipates it is likely to call, whether in its case-in-chief or in rebuttal."Howard, 56 Ohio St.2d at 333. See, also, Lorraine,66 Ohio St.3d at 423.
 {¶ 60} However, while the trial court may have been incorrect in finding that the state did not need to disclose Morgan's name because he was only being called as a rebuttal witness, we conclude that the trial court did not abuse its discretion or otherwise err in permitting Morgan to testify as a rebuttal witness. As Howard and Lorraine indicate, the key question when this issue arises is whether the state could have "reasonably anticipated" whether it was likely to call the witness in rebuttal. Howard, 56 Ohio St.3d at 333; Lorraine,66 Ohio St.3d at 423.
 {¶ 61} We agree with the state that the prosecution in this case could not have reasonably anticipated that appellant would challenge Agent Mace's assertion that he merely simulated the smoking of marijuana on those occasions when he needed to do so in order to gain the confidence of persons with whom he was dealing. Furthermore, there is no persuasive evidence in this case "of bad faith or willful withholding of this evidence."Lorraine, 66 Ohio St.3d at 423. Therefore, we conclude that the trial court's decision to allow the state to present Morgan as a rebuttal witness does not qualify as an abuse of discretion or, otherwise, as reversible error.
 {¶ 62} Appellant also argues that the state should have called Morgan in its case-in-chief "to bolster Mr. Mace's testimony," and not as a rebuttal witness. We find this argument unpersuasive.
 {¶ 63} "A party has an unconditional right to present rebuttal testimony on matters which are first addressed in an opponent's case-in-chief and should not be brought in the rebutting party's case-in-chief." Phung v. Waste ManagementInc., 71 Ohio St.3d 408, 410, 1994-Ohio-389. Evid.R. 608(A)(2) provides that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
 {¶ 64} In this case, Morgan's testimony properly rebutted the testimony of appellant's witnesses. Furthermore, if the state had tried to call Morgan as a witness during presentation of its case-in-chief, the state may have been vulnerable to a charge that it was trying to improperly bolster the credibility of its witness.
 {¶ 65} In his final argument under this assignment of error, appellant contends that Morgan "did not have the requisite expertise to testify about the results of any drug screen that he may have performed on Mr. Mace," and "should not have been permitted to testify as a quasi-expert by stating that the drug screens for Mr. Mace were negative." We find this argument unpersuasive.
 {¶ 66} During the state's direct examination of Agent Mace, Mace testified that he had been trained to "simulate" smoking a marijuana cigarette in order to gain the confidence of the persons with whom he was dealing. He explained how he did this without actually ingesting any marijuana.[1] Mace testified that NASS has "zero tolerance" regarding the use of illegal drugs by their undercover agents and, therefore, NASS's agents, himself included, are tested regularly for drug use — approximately every 60 days. He also testified that if one of his drug tests came back positive, he would be terminated immediately. Appellant raised no objection to this testimony.
 {¶ 67} On cross-examination, appellant's counsel questioned Agent Mace as follows:
 {¶ 68} "Q. Mr. Mace, * * * do you have any evidence that you were actually tested for drugs during this four-month period?
 {¶ 69} "A. I was drug tested, yeah.
 {¶ 70} "Q. Do you have any evidence that you were drug tested during this four-month period, Mr. Mace?
 {¶ 71} "A. There should be, yes.
 {¶ 72} "Q. Where is it?
 {¶ 73} "A. I can't answer that question. I don't know.
 {¶ 74} "Q. You can't answer that question because it doesn't exist, Mr. Mace?
 {¶ 75} "A. No, it does exist.
 {¶ 76} "Q. All right. But you didn't think that it was important enough to bring it here to show that you had not consumed any marijuana or drugs during your four-month period? Correct, Mr. Mace?* * * *
 {¶ 77} "A. Actually, it's not my decision.
 {¶ 78} "Q. Okay. But it's not here, is it, today, for the jury to see?
 {¶ 79} "A. No, it's not.
 {¶ 80} "Q. Thank you."
 {¶ 81} In presenting his case-in-chief, appellant presented the testimony of several witnesses who testified that Agent Mace did not simulate smoking the marijuana cigarette, but actually smoked and ingested it. Appellant's purpose in presenting this testimony was to undermine Mace's credibility.
 {¶ 82} The state presented Morgan's testimony to rebut the testimony of appellant's witnesses who testified that Agent Mace did not simulate smoking marijuana, but instead, actually smoked and ingested it. The trial court granted appellant a continuing objection to Morgan's testimony. First, Morgan testified, as Mace did, that NASS's employees are tested every 60 days to determine if they had used illegal drugs. Morgan's testimony included a brief description of the drug test that NASS uses on it agents to determine the agent's compliance. He explained that he clipped some hair from the agent and mailed the sample to a lab in California. He concluded by testifying that he received the lab's reports on the drugs tests performed on Mace and that no disciplinary action had been taken against Mace as a result of those reports, thereby implying that the drug tests performed on Mace showed that he had not used illegal drugs.
 {¶ 83} As to appellant's argument that Morgan "did not have the requisite expertise to testify about the results of any drug screen that he may have performed on Mr. Mace," and "should not have been permitted to testify as a quasi-expert by stating that the drug screens for Mr. Mace were negative," we conclude that appellant "opened the door" to this testimony, and invited any error that may have been committed by the presentation, of Morgan's testimony.
 {¶ 84} Under the "invited error" doctrine, a party may not take advantage of an error which he himself invited or induced.State v. Murphy, 91 Ohio St.3d 516, 535, 2001-Ohio-112. At least one federal appeal court has stated that under the invited error doctrine, a party may not complain on appeal of an error that he himself invited or that he provoked the trial court or the opposing party to commit. Harvis v. Roadway Exp. Inc.
(C.A.6, 1991), 923 F.2d 59, 60-61. The invited error doctrine is "a cardinal rule of appellate review," and several federal appellate courts have applied the doctrine to a "wide range of conduct." Id., citing Crockett v. Uniroyal, Inc., (C.A.11, 1985), 772 F.2d 1524, 1530; Gundy v. United States (C.A.10, 1984), 728 F.2d 484; and Weise v. United States (C.A.7, 1984),724 F.2d 587 (submission of evidence).
 {¶ 85} In this case, appellant's counsel asked Agent Mace on cross examination if he could produce evidence of the results of the drug tests. When Mace said he did not know where the results of the drug tests were, appellant's counsel suggested that he could not produce evidence of the results of the drug tests because such evidence did not exist.
 {¶ 86} The state responded to this by having Morgan testify about NASS's drug policy and the results of Agent Mace's drug tests. These issues were placed into controversy by appellant's counsel's cross-examination of Mace and by appellant's witnesses who testified on appellant's behalf. Any error in the admission of this evidence was invited by the defense. The trial court did not abuse its discretion in permitting this testimony.
 {¶ 87} Appellant's fifth assignment of error is overruled.
 {¶ 88} Assignment of Error No. 6:
 {¶ 89} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRRULING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AND THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 90} Appellant argues that the trial court erred in overruling his Crim.R. 29 motion for acquittal at the close of the state's case and that his conviction was against the manifest weight of the evidence. We disagree with both of these arguments.
 {¶ 91} Crim.R. 29(A) states, in pertinent part:
 {¶ 92} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 93} Although appellant raises both challenges in one assignment of error, a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence. State v. McKnight, 107 Ohio St.3d 101, 112,2005-Ohio-6046, citing State v. Scott, 101 Ohio St.3d 31,2004-Ohio-10.
 {¶ 94} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" McKnight, 107 Ohio St.3d at 112, quoting State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 95} In reviewing a claim that a conviction is against the manifest weight of the evidence, an appellate court applies a different test. McKnight, 107 Ohio St.3d at 112. In considering a manifest weight of the evidence challenge, an appellate court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 96} Appellant argues that the jury "clearly lost its way" when it found him guilty of trafficking in marijuana, because he presented seven witnesses, including himself, who testified that he did not sell marijuana, while the state only presented one witness, Agent Mace, whose credibility was seriously undermined. We find this argument unpersuasive.
 {¶ 97} Initially, it is apparent that Mace's testimony that appellant sold marijuana to him provided sufficient evidence to convict him of the offense of trafficking in marijuana in violation of R.C. 2925.03(A)(1)(C)(3)(a). "The credibility of the evidence is not the focus of a Crim.R. 29(A) motion; rather, the motion focuses solely upon the legal sufficiency of the evidence.State v. Dunaway (Feb. 18, 1997), Butler App. No. CA96-08-152, citing State v. Harcourt (1988), 46 Ohio App.3d 52. Thus, appellant's argument is essentially that his conviction is against the manifest weight of the evidence.
 {¶ 98} In reviewing a claim that a conviction is against the manifest weight of the evidence, an appellate court is obligated to consider, among other things, the weight to be given the evidence presented and the credibility of the witnesses. SeeThompkins, 78 Ohio St.3d at 387, quoting Martin,20 Ohio App.3d at 175. However, the weight to be given the evidence presented and the credibility of the witnesses are primarily matters for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, it is well-settled that a jury is free to believe or disbelieve all, part or none of the testimony of any witness since the jury is in a much better position than a reviewing court to view the witnesses, observe their demeanor, and assess their credibility.State v. Nichols (1993), 85 Ohio App.3d 65, 76.
 {¶ 99} In this case, it is apparent that the jury chose to believe Mace and disbelieve appellant and his witnesses. We do not find that they lost their way in doing so. Among other things, all of appellant's witnesses were his friends, and there was no evidence that Agent Mace had any reason to falsely accuse appellant of selling marijuana.
 {¶ 100} Appellant's sixth assignment of error is overruled.
 {¶ 101} The trial court's judgment is affirmed.
Walsh, P.J., and Bressler, J., concur.
[1] {¶ a.} When Mace was asked on direct to explain how he had been trained to simulate the smoking of a marijuana cigarette, he explained as follows:
{¶ b.} "You can take it, pinch the end and not take any in your mouth. Kind of hold the cherry or look away if there's a lot of people around.
{¶ c.} "The first time, usually, when you smoke around people, they do stare at you to make sure that you're actually ingesting it.
{¶ d.} "But in that case, you could just hold it in your mouth and just blow it out and make it look like you actually ingested it. But you really don't take it into your lungs."