OPINION
{¶ 1} Defendant-appellant, Wilma J. Howland, appeals her conviction in the Fayette County Court of Common Pleas on one third-degree felony count of complicity to illegal possession of chemicals for the manufacture of drugs, one third-degree felony count of complicity to theft, and one fifth-degree felony count of breaking and entering. We affirm.
 {¶ 2} This case arises out of an incident that occurred in the early morning hours of *Page 2 
March 11, 2006, during which appellant allegedly participated in the theft of anhydrous ammonia, a precursor to the manufacture of methamphetamine, from Rodney Miller's property in Washington Court House, Ohio. Prior to the alleged theft, appellant had spent the evening of Friday March 10, 2006, drinking beer with her friend and co-defendant in this matter, Ronald Gragg.[1] Later that evening, at approximately 11:00 p.m., appellant and Gragg decided to go to the home of Bryan Cook to drink.
 {¶ 3} A few hours after arriving at Cook's house, in the early morning hours of March 11, 2006, Cook requested appellant to drive him to his grandparents' house to get money, to which appellant agreed. Appellant, Gragg and Cook then left in appellant's vehicle, and Cook directed appellant as she drove, leading her to the Miller property. When they arrived at the Miller property, appellant pulled into the wrong driveway, at which point Cook instructed her to turn around and pull into the next driveway. After appellant did so, Cook exited the vehicle and instructed appellant to turn her vehicle around to face the road.
 {¶ 4} Cook proceeded to steal anhydrous ammonia from storage tanks located behind Miller's house, which he put in a glass pickle jar that he had brought with him. He then got back into appellant's vehicle, and the group proceeded to drive away. Miller was awakened by the sound of appellant's vehicle on his property, and called the Fayette County Sheriff's Office to report the incident. Miller proceeded to follow the vehicle as it left his property, until Sergeant James Sears of the Fayette County Sheriff's Office arrived and pulled the vehicle over. According to Sergeant Sears, appellant did not immediately pull over when he activated his overhead lights, but rather, continued driving at a slow rate of speed, eventually stopping after he activated his siren. *Page 3 
 {¶ 5} Upon approaching the driver's side door of the vehicle, Sergeant Sears detected a strong odor of ammonia. He identified the vehicle's occupants, including appellant who was seated in the driver's seat, Gragg who was seated in the front passenger's seat, and Cook who was seated in the rear passenger's seat, and placed them in separate police cruisers. By then, Ross County Deputy Sheriff Christopher Clark had arrived at the scene, as appellant had crossed from Fayette County to Ross County by the time she pulled over in response to Sergeant Sears.
 {¶ 6} Deputy Clark testified that upon arriving at the scene, he recognized Cook from a previous arrest for stealing anhydrous ammonia. In fact, Cook had stolen the same substance from the Miller property before. Deputy Clark also testified that because of his training and experience, he is very familiar with anhydrous ammonia, and that when he smelled the interior of the vehicle at the scene, he detected anhydrous ammonia.
 {¶ 7} Sergeant Sears and Deputy Clark both testified that they walked around the vehicle, and that as they approached the passenger side, they again detected a strong odor of ammonia. The smell was stronger outside the car than it was inside, prompting the officers to search the area with flashlights. In a weeded area next to the vehicle, the two officers discovered a glass pickle jar that was frosted over and had a white vapor emanating from it. Lieutenant Kevin Pierce, a lab-certified methamphetamine technician with the Ross County Sheriff's Office, was called to the scene to test the substance in the jar. The jar's contents tested positive for anhydrous ammonia.
 {¶ 8} An inventory search of appellant's vehicle was later performed, yielding funnels, a pair of gloves, cans of starter fluid, an air compressor, and various tools. The cans of starter fluid recovered from the vehicle had puncture holes in them. Deputy Clark testified at trial that anhydrous ammonia, starter fluid, and funnels can be used to manufacture methamphetamine. He also testified that cans of starter fluid with puncture holes are "100 *Page 4 
percent of the time" used to manufacture methamphetamine.
 {¶ 9} All three individuals were charged following the incident, with appellant's charges including the following: (1) assembly or possession of chemicals used to manufacture methamphetamine, in violation of R.C.2925.041, with a specification of forfeiture pursuant to R.C. 2925.42; (2) theft of anhydrous ammonia, in violation of R.C. 2913.02; and (3) breaking and entering, in violation of R.C. 2911.13. Cook entered a guilty plea, while appellant and Gragg pleaded not guilty and were jointly tried before a jury. At the close of appellant's and Gragg's respective cases, the state moved the trial court to amend appellant's indictment to conform to the evidence, which the trial court granted. Appellant's charges of theft and illegal possession of chemicals were therefore amended to complicity on both counts. On August 22, 2006, appellant was found guilty of complicity to illegal possession of chemicals for the manufacture of drugs, complicity to theft, and breaking and entering, and was subsequently sentenced to three years in prison.
 {¶ 10} Appellant now appeals her conviction, advancing four assignments of error. For ease of discussion in this opinion, we address appellant's assignments of error out of order, beginning with appellant's second assignment of error.
 {¶ 11} Assignment of Error No. 2:
 {¶ 12} "THE EXPERT OPINION TESTIMONY GIVEN BY LT. KEVIN PIERCE REGARDING A `DRAGGER PUMP' [SIC] READING WAS NOT BASED UPON A SCIENTIFICALLY RELIABLE AND OBJECTIVELY VERIFIABLE TEST, AND WAS NOT VALIDLY DERIVED FROM WIDELY ACCEPTED KNOWLEDGE, FACTS OR PRINCIPLES[.]"
 {¶ 13} In her second assignment of error, appellant argues the trial court erred in permitting Lieutenant Kevin Pierce to testify on behalf of the state as an expert witness and in admitting test results concerning the presence of ammonia, where the state failed to establish *Page 5 
the test's reliability pursuant to Evid.R. 702. We find appellant's arguments without merit.
 {¶ 14} As an initial matter, appellant acknowledges her trial counsel raised no challenge to Lieutenant Pierce's testimony at trial. It is well-established that a defendant waives all but plain error with respect to errors arising during trial that are not brought to the attention of the trial court. State v. McKee, 91 Ohio St.3d 292, 294,2001-Ohio-41; State v. Rigdon, Warren App. No. CA2006-05-064,2007-Ohio-2843, ¶ 13. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. McKee; Crim.R. 52(B). Further, plain error applies only in exceptional circumstances to avoid a miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, 95.
 {¶ 15} At trial, the state presented the testimony of Ross County lab-certified methamphetamine technician, Lieutenant Pierce. Lieutenant Pierce first testified as to his experience and training, indicating that he is the commander of the Ross County Sherriff's Department tactical team, is affiliated with a pipeline taskforce, and is lab certified to test and identify chemicals used in the manufacture of methamphetamine. Lieutenant Pierce testified that when he arrived at the scene, he used a Draeger pump[2] to test for the presence of ammonia in the air, and that the pump turned purple, indicating the air was "polluted with ammonia." Lieutenant Pierce further testified that he performed a pH test which resulted in a reading of eight, indicating there were no acids present, and that "if it's not an acid, then it's ammonia."
 {¶ 16} Our review of the record indicates that Lieutenant Pierce's testimony was not offered as expert testimony, and therefore, that Evid.R. 702 was not implicated. The Ohio *Page 6 
Supreme Court has specifically held that "the experience and knowledge of a * * * lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." McKee, 91 Ohio St.3d at syllabus. With respect to police identification of anhydrous ammonia, the Third Appellate District has held that the state is "entitled to establish the identity of a drug through circumstantial evidence as long as a lay witness has first hand knowledge and a `reasonable basis-grounded either in experience or specialized knowledge-for arriving at the opinion expressed.'" State v. Vogel, Crawford App. No. 3-05-10, 2005-Ohio-5757, ¶ 11, quoting McKee at 294-296.
 {¶ 17} In this case, Lieutenant Pierce testified as to his education, training, and experience in the areas of methamphetamine and anhydrous ammonia, including the fact he is lab certified to test and identify chemicals used to manufacture methamphetamine. He then testified that based on the Draeger test results and pH reading, the chemical found at the scene was anhydrous ammonia. Accordingly, we find Lieutenant Pierce was qualified to testify as a lay witness, and therefore, that the trial court did not err in admitting Lieutenant Pierce's testimony as to the identity of the anhydrous ammonia. Appellant's second assignment of error is overruled.
 {¶ 18} Assignment of Error No. 1:
 {¶ 19} "THE STATE'S FAILURE TO DISCLOSE THE DRAEGER PUMP AND PH TESTS AS REPORTS OF EXAMINATIONS OR TESTS UNDER CRIMINAL RULE 16 AMOUNTS TO PROSECUTORIAL MISCONDUCT[.]"
 {¶ 20} Appellant also argues the state committed prosecutorial misconduct in allegedly failing to disclose the test results concerning the anhydrous ammonia, in accordance with Crim.R. 16. We disagree.
 {¶ 21} In this case, we find no error exists, as the record demonstrates the state *Page 7 
disclosed information concerning the pH and Draeger tests Lieutenant Pierce performed at the scene, including the fact such tests indicated a positive result for anhydrous ammonia. The record indicates such information was disclosed in Deputy Clark's narrative statement, and that no formal reports concerning the testing existed. Accordingly, we find no merit to appellant's contention that the state committed prosecutorial misconduct in failing to disclose information concerning the subject tests. Appellant's first assignment of error is therefore overruled.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "COUNSEL FOR THE DEFENDANT WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE EXPERT OPINION TESTIMONY REGARDING `DRAGGER PUMP' [SIC] AND PH TEST RESULTS WHERE THERE WAS NO DISCLOSURE BY THE PROSECUTION OF THE INTENT TO USE SUCH TEST RESULTS, AND THERE WAS NO FOUNDATION FOR THE EXPERT OPINION TESTIMONY REGARDING THOSE RESULTS[.]"
 {¶ 24} In her third assignment of error, appellant argues her trial counsel was ineffective in failing to object to Lieutenant Pierce's testimony where the state failed to disclose the Draeger and pH test results, and where there was no foundation for Lieutenant Pierce's expert opinion concerning such test results. We find appellant's arguments without merit.
 {¶ 25} To prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two-part test set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, the defendant must demonstrate that her trial counsel's performance was deficient, or "fell below an objective standard of reasonableness." Id. at 687-688. Second, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. *Page 8 
 {¶ 26} Appellant argues her trial counsel was ineffective because he failed to object to Lieutenant Pierce's "expert witness testimony" regarding the Draeger and pH test results, where the test results were not disclosed and where there was no foundation for Lieutenant Pierce's testimony. As stated, however, our review of the record demonstrates the testing Lieutenant Pierce performed and the results of such tests were disclosed to appellant's trial counsel in the state's response to appellant's discovery request. Moreover, Lieutenant Pierce's testimony was not offered as expert testimony, but rather, as testimony of a qualified lay witness regarding the identity of anhydrous ammonia. As such, we find there was no basis for an objection to Lieutenant Pierce's testimony, and trial counsel was not ineffective in failing to object to Lieutenant Pierce's testimony regarding the test results and the identity of the anhydrous ammonia. Appellant's third assignment of error is therefore overruled.
 {¶ 27} Assignment of Error No. 4:
 {¶ 28} "THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION OF THE DEFENDANT FOR POSSESSION OR CONTROL OF ANHYDROUS AMMONIA, OR FOR THE THEFT OF ANHYDROUS AMMONIA, AS THE TESTIMONY THAT WAS OFFERED WAS LEGALLY INSUFFICIENT TO PROVE THE SUBSTANCE RECOVERED WAS IN FACT, ANHYDROUS AMMONIA[.]"
 {¶ 29} In her final assignment of error, appellant argues the evidence presented at trial is insufficient to support her conviction for complicity to illegal possession of anhydrous ammonia for the manufacture of drugs and complicity to theft of anhydrous ammonia, where the state failed to prove that the chemical recovered at the scene was, in fact, anhydrous ammonia. We find appellant's argument without merit.
 {¶ 30} A sufficiency of the evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 386, *Page 9 1997-Ohio-52. In reviewing the sufficiency of the evidence to support a criminal conviction, the reviewing court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 31} In considering the sufficiency of the evidence, a reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. See, also,State v. White, Franklin App. No. 06AP-607, 2007-Ohio-3217, ¶ 26. A reviewing court must not substitute its evaluation of the witnesses' credibility for that of the jury. See State v. Benge, 75 Ohio St.3d 136,143, 1996-Ohio-227.
 {¶ 32} It is well-established that both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. State v.McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75; State v.Crutchfield, Warren App. No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. "[Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." McKnight. A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. State v. Apanovitch (1987), 33 Ohio St.3d 19, 27.
 {¶ 33} Appellant was convicted of complicity to illegal possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A) and 2923.03, and complicity in the commission of theft, in violation of R.C. 2913.02(A)(1) and 2923.03. "Complicity" is defined in *Page 10 
R.C. 2923.03(A)(2) as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To aid and abet is "`[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" State v. Johnson (2001), 93 Ohio St.3d 240, 243,2001-Ohio-1336, quoting Black's Law Dictionary (7th Ed.1999) 69. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." Johnson at syllabus.
 {¶ 34} Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. State v. Lett, 160 Ohio App.3d 46, 2005-Ohio-1308, ¶ 29. "[T]he mere presence of an accused at the scene of a crime is not sufficient[,]" however, "to prove, in and of itself, that the accused was an aider and abettor." State v. Widner (1982), 69 Ohio St.2d 267,269. "[T]here must be some level of active participation by way of providing assistance or encouragement." State v. Nievas (1997),121 Ohio App.3d 451, 456.
 {¶ 35} Appellant first challenges her conviction for complicity to illegal possession of chemicals for the manufacture of drugs. Appellant argues insufficient evidence was presented to prove the substance in question was, in fact, anhydrous ammonia. R.C. 2925.041(A) provides, "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C] 2925.04." Possession means "having control over a thing or substance, but may not be inferred solely *Page 11 
from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Further, R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 36} After a thorough review of the record, we find sufficient circumstantial evidence was presented at trial such that a rational trier of fact could conclude beyond a reasonable doubt that appellant aided and abetted Bryan Cook in the possession of anhydrous ammonia. The undisputed evidence presented at trial indicates that appellant agreed to drive Cook to the Miller property in the early morning hours of March 11, 2006, after Cook indicated he wanted to go to his grandparents' home to get money. Appellant testified that Cook directed her to the property, and that she turned into a driveway close to a house located on the property but was instructed by Cook to turn around and pull into a different driveway. Appellant indicated that she pulled into the next driveway, then turned the car around to face the road, as instructed by Cook, while Cook exited the vehicle. Cook testified that the location at which he exited the car was "obviously" not a house. Appellant likewise acknowledged that Cook never went inside a house, and that she did not ask him why he did not do so.
 {¶ 37} Appellant testified that once Cook returned to the vehicle, she proceeded to drive away and began to smell something in the car. Appellant testified that the odor was strong enough that she had to roll her window down. Ronald Gragg also testified that he smelled a strong odor which he recognized as ammonia, and that the odor "makes your eyes water and takes your breath." Appellant testified that Cook told her he had broken a bottle of window cleaner as an explanation for the smell, but Cook denied having told appellant as such.
 {¶ 38} Sergeant Sears testified that after pulling over appellant's vehicle and *Page 12 
approaching the driver's side door, he detected an extremely strong odor of ammonia, so strong that the odor gave him "a headache almost immediately." A second officer, Deputy Clark, who has had experience with anhydrous ammonia through his positions on the major crimes task force and S.W.A.T. team, testified that when he placed his head inside the car, he could smell anhydrous ammonia. He further indicated that the odor strengthened when he walked around the vehicle to the passenger side, and that he discovered a pickle jar in a weeded area beside the vehicle, that had frosted over and from which "vapors" were emanating.
 {¶ 39} The record also indicates that appellant did not pull over immediately upon noticing a police cruiser behind her with its lights activated. Sergeant Sears testified that appellant's vehicle proceeded to travel at a slow rate of speed after he had activated his overhead lights, and did not pull over immediately. Cook testified that when he noticed the police cruiser's overhead lights, he told appellant he had anhydrous ammonia and needed to throw it out of the car before she could stop. Although appellant denied Cook told her this, appellant acknowledged that she made a right hand turn onto another road, as instructed by Cook, before pulling over.
 {¶ 40} As to the identity of the substance recovered from the scene as anhydrous ammonia, the state presented the testimony of Rodney Miller, on whose property the storage tanks filled with the alleged substance were located. Miller testified that the storage tanks were filled with anhydrous ammonia, which he uses as a fertilizer on his farm, and that he has had problems in the past with people stealing the substance. The state also presented the testimony of Cook, who admitted he "stole anhydrous ammonia" from Miller's storage tanks on the date in question by placing the substance in a pickle jar, and that he had done so on previous occasions. Cook testified that he was going to sell the substance to a friend.
 {¶ 41} In addition, and as stated, Sergeant Sears and Deputy Clark both testified as to *Page 13 
smelling a strong odor of ammonia emanating from the inside of the vehicle. The state also presented the testimony of Lieutenant Pierce, who is lab certified in testing and identifying chemicals used to manufacture methamphetamine. Lieutenant Pierce testified that he performed Draeger and pH tests of the substance recovered from the scene, both of which yielded a positive result for ammonia.
 {¶ 42} Notably, the state also presented evidence of items recovered from the interior of appellant's vehicle, including funnels, gloves, and an air compressor. Although appellant explained that she had these items due to mechanical problems she was experiencing with her vehicle, investigating officers testified such items could be used to manufacture methamphetamine. In addition, the state presented as evidence cans of starter fluid with puncture holes, also found in appellant's vehicle, which Deputy Clark testified could only be used to manufacture methamphetamine.
 {¶ 43} As stated, to aid and abet is to assist or facilitate the commission of a crime or to promote its accomplishment, and participation in criminal intent may be inferred from conduct after the offense is committed. Johnson, 93 Ohio St.3d at 243, 245. Considering the foregoing facts and circumstances in a light most favorable to the state, we find the state presented sufficient evidence such that a rational trier of fact could find beyond a reasonable doubt that appellant aided and abetted Cook in the illegal possession of anhydrous ammonia. The jury was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part or none of the testimony of the witnesses at trial. State v. Wood, Preble App. No. CA2005-11-081,2006-Ohio-3781, ¶ 98; State v. Nichols (1993), 85 Ohio App.3d 65, 76;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 44} Appellant also challenges her conviction for complicity to theft on the basis the state failed to prove the substance recovered at the scene was anhydrous ammonia. R.C. *Page 14 2913.02(A)(1) provides, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."
 {¶ 45} As stated, the evidence presented at trial indicates that Cook admitted having stolen the anhydrous ammonia from the Miller property. The owner of the substance in question, Rodney Miller, testified that he kept anhydrous ammonia in his storage tanks to use as a fertilizer, and that he has had problems with people stealing the substance. Investigating officers testified as to smelling a strong odor of ammonia at the scene, and Lieutenant Pierce specifically testified that the Draeger and pH tests he performed yielded positive results for anhydrous ammonia.
 {¶ 46} In addition, although appellant testified that Cook requested a ride to his grandparents' home to get money, the record indicates that the group arrived at the Miller property at approximately 4:00 a.m. and that Cook never went inside a house at the location. Although appellant denied having knowledge that Cook was going to steal anhydrous ammonia at the time the group left Cook's house, the testimony presented at trial indicated that Cook's girlfriend, who was also present at Cook's house that night, knew of Cook's plan to steal the substance before the group left the house.
 {¶ 47} When Cook returned to the vehicle after filling a pickle jar with the anhydrous ammonia from Miller's storage tanks, appellant indicated that she began to smell a strong odor and had to roll her windows down as she drove the group back home. The record indicates that appellant did not immediately pull over when Sergeant Sears activated his overhead lights, and Cook testified that he told appellant he had anhydrous ammonia that he needed to throw out before she could stop.
 {¶ 48} Considering the foregoing facts and circumstances surrounding the theft of the anhydrous ammonia, we find the state presented sufficient evidence such that a rational trier *Page 15 
of fact could conclude, beyond a reasonable doubt, that appellant knowingly aided and abetted Cook in obtaining or exerting control over the substance in question without Miller's consent and with the purpose to deprive Miller of the substance. As stated, the trier of fact was in a better position to assess witness credibility and was permitted to resolve conflicts in the testimony accordingly. Jackson,443 U.S. at 319, 99 S.Ct. 2781.
 {¶ 49} Based upon the foregoing, we find appellant's fourth assignment of error without merit and overruled the same accordingly.
 {¶ 50} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Gragg's conviction for complicity to illegal possession of chemicals for the manufacture of drugs, complicity to theft, and breaking and entering was affirmed by this court in a separate appeal on September 17, 2007. See State v. Gragg, 173 Ohio App.3d 270,2007-Ohio-4731.
[2] Draeger is the manufacturer of a brand of gas-detection kit. "The Draeger test is used to detect the presence of certain chemicals, including anhydrous ammonia. To conduct the test, * * * four steps [are] followed. * * * If the designated air contaminant is present, it reacts with the chemical reagent in the tube, producing a color change. Seehttp://www.afcintl.com/tubemain.htm (last visited Mar. 11, 2004)."West v. State (Ind.App. 2004), 805 N.E.2d 909, 912, fn. 1. *Page 1