[Cite as *State v. Mielke*, 2013-Ohio-1612.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2012-08-079 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 4/22/2013 |
| - vs - | : | |
| | : | |
| TIM MIELKE, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CR27812

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Jeffrey E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Tim Mielke, appeals his convictions and sentence in the Warren County Common Pleas Court for trafficking in drugs and engaging in a pattern of corrupt activity.

{¶ 2} On October 31, 2011, appellant was indicted on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and 31 counts of drug trafficking

in violation of R.C. 2925.03(A)(2) with several counts carrying enhancement specifications for exceeding the bulk amount of drugs and for transactions occurring in the vicinity of a school.

{¶ 3} On May 3, 2012, a bench trial was held. Matthew Geraci was the first witness to testify for the state. Geraci stated that he had used steroids personally since 2006 and had engaged in the buying and selling of steroids on a small scale since 2009. In 2010, Geraci began selling steroids more regularly out of his residence in Symmes Township, Hamilton County, Ohio. At this time, Geraci had anywhere from 15 to 20 "customers," including appellant. Geraci explained that he would typically be contacted via text message by a customer for steroids, would create an invoice and prepare the order of steroids, and then distribute the steroids to the customer in one of two ways: (1) Geraci would either engage in a hand-to-hand exchange with the customer, or (2) Geraci would place the steroids in a grill on the back patio of his residence and the customer would take the steroids, leaving money in the grill as payment.

{¶ 4} This system continued until April 2011 when Geraci moved his steroid operation to the CMC Office Center on Reed Hartman Highway in Blue Ash, Hamilton County, Ohio. At the office center, Geraci established what he referred to as the "locker system." Within "Room F" of the CMC Office Center, Geraci set up a series of lockers and assigned each distributor his own locker. After a distributor contacted Geraci via text message with an order, he would place the steroids and an invoice in the appropriate locker. The distributor would then collect the steroids and leave money in the locker for Geraci to collect at a later time. In total, 17 distributors participated in the locker system, including appellant. According to Geraci, appellant was one of his top distributors.[1]

{¶ 5} Geraci then testified regarding the "meticulous" records he kept of what steroids

---

1. For more information on the locker system, *see State v. Howard*, 12th Dist. No. CA2012-04-034, 2013-Ohio-1489.

he sold to each distributor, including Invoices 172, 173, 738, 862, and 914, which were orders made by appellant. According to these invoices, on August 24, 2010, April 8, 2011, May 18, 2011, and June 8, 2011, Geraci sold appellant large quantities of steroids including 30 pills of "Anadrol Tabs," four vials of "Sustanon 250," 180 vials of "Dbol 10," 16 vials of "Test 450," and 30 pills of "Winny Tabs." Geraci explained that each vial of steroids sold contained approximately 10 milliliters (mL) of steroids and were labeled with a "Synergy Pharmaceutical" label. Geraci also stated that he had personally used 95% of the product he sold to appellant and that, to the best of his knowledge, everything he sold to appellant was a steroid except HCG, Arimedex, Primo 50, and Clenbuterol.[2]

{¶ 6} Agent Jim Burk of the Bureau of Alcohol, Tobacco, Firearms, and Explosives then testified regarding his involvement in Geraci's steroid operation as an undercover agent. Agent Burk explained that he made several purchases of steroids from an individual named Joshua Haberstroh. After the second "controlled buy" involving Haberstroh, Haberstroh was arrested by Agent Burk and began participating with the Warren County Drug Task Force as a confidential informant. Haberstroh introduced Agent Burk to Geraci and, from there, Agent Burk made a series of controlled drug purchases from Geraci until search warrants were executed on Geraci's residence and the CMC Office Center on June 21, 2011. Agent Burk testified that the controlled buys between himself, Haberstroh, and Geraci occurred in Warren County and each buy involved similar steroids to each other. Specifically, Agent Burk mentioned that the steroids were sold in the same size vials and "were all labeled with Synergy Pharmaceutical" labels. Agent Burk further testified that these vials were tested by the Miami Valley Crime Laboratory and contained different varieties of anabolic steroids.[3]

---

2. Appellant was found not guilty of the counts in the indictment involving HCG, Arimedex, Primo 50, and Clenbuterol.

3. Four vials purchased from Haberstroh did not contain any steroids, though they were labeled as containing "Winstrol 100."

{¶ 7} Based upon surveillance photographs taken of appellant entering and exiting Room F of the CMC Office Center, Agent Burk and Detective Bill Couch of the Warren County Drug Task Force interviewed appellant at his parents' home in Green Township on October 3, 2011.[4] After being read his *Miranda* rights, appellant admitted to knowing Geraci, having met him through a mutual friend in June 2010. During this initial June 2010 meeting, the pair discussed steroids and Geraci offered to supply appellant with steroids. Appellant then admitted to Agent Burk and Detective Couch that he purchased steroids from Geraci at Geraci's residence and the CMC Office Center in Hamilton County and that the invoices maintained by Geraci regarding appellant's steroid purchases were accurate. Appellant further admitted that he sold approximately 75% of the steroids he purchased from Geraci to 10 customers while keeping 25% for personal use.

{¶ 8} Detective Couch then testified that he learned about appellant's involvement in Geraci's steroid operation through cooperating witnesses who had identified appellant as a steroid trafficker. Detective Couch further provided that he was familiar with Geraci's locker system and that a "day care slash also kindergarten" named "kindergarten (sic)" was located approximately 250 feet away from Room F, as well as another room within the CMC Office Center where the majority of the steroids were stored prior to sale.[5]

{¶ 9} Appellant did not put on a defense and, at the close of the state's case, moved for a Crim.R. 29 motion for judgment of acquittal. The trial court denied the motion and ultimately found appellant guilty of 14 of the 32 counts, including 13 counts of drug trafficking and one count of engaging in a pattern of corrupt activity. The trial court imposed a total sentence of three years, nine months incarceration upon appellant.

---

4. This interview was recorded and admitted into evidence by the state during the bench trial.

5. The record reveals the actual name of the kindergarten/daycare to be the "Kinder Garden School."

{¶ 10} From his convictions, appellant now appeals, raising seven assignments of error. For ease of discussion, the assignments of error shall be addressed out of turn.

{¶ 11} Assignment of Error No. 6:

{¶ 12} THE [TRIAL] COURT ERRED IN FINDING THAT THE STATE HAD PROVED (SIC) AN ESSENTIAL ELEMENT OF THE CRIME; TO WIT: VENUE.

{¶ 13} In his sixth assignment of error, appellant argues the state failed to prove that Warren County was the proper venue for at least some of the counts alleged in the indictment and, therefore, his Crim.R. 29 motion for acquittal should have been granted. Specifically, appellant alleges that those charges which occurred prior to April 2011, when Geraci's steroid operation was still being run out of his home in Symmes Township, should be dismissed, as venue would have only been proper in Hamilton County.

{¶ 14} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Stone*, 12th Dist. No. CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity." *Id.* at ¶ 16; *Meridy* at ¶ 12. The standard in establishing venue is whether the defendant has a "significant nexus" with the county where the trial was held. *Stone* at ¶ 16; *Meridy* at ¶ 22. "As a result, and pursuant to R.C. 2901.12(A), a criminal trial shall be held in a court having jurisdiction over the subject matter and in a territory where the offense, or any element of the offense, was committed. *Stone* at ¶ 16.

{¶ 15} "Venue is not a material element of any offense charged." *Id.* at ¶ 17; *Meridy* at ¶ 12. However, the state "must prove beyond a reasonable doubt that the crime charged was committed in the county where the indictment was returned and the trial held[.]" *Stone* at ¶ 17; *Meridy* at ¶ 12. A defendant waives the right to challenge venue when the issue is raised for the first time on appeal. *Stone* at ¶ 17; *State v. Shedwick*, 10th Dist. No. 11AP-

709, 2012-Ohio-2270, ¶ 36.

{¶ 16} In this case, appellant's trial counsel made a Crim.R. 29 motion for acquittal at the close of the state's case, arguing that the state failed to prove that appellant trafficked in a controlled substance.[6] However, appellant did not make any objection in the Crim.R. 29 motion, or at any other time during trial, regarding venue. Therefore, because appellant raises the issue for the first time on appeal, he has waived any challenge to venue but for plain error. *Shedwick* at ¶ 37-38; *Stone* at ¶ 18.

{¶ 17} "A plain error is any error or defect 'affecting substantial rights [that] may be noticed although they were not brought to the attention of the court.'" *Stone* at ¶ 19, quoting Crim.R. 52(B). In other words, to constitute plain error, the error (1) must be a deviation from the legal rule, (2) must be an obvious defect in the trial proceedings, and (3) must have affected the defendant's substantial rights. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Stone* at ¶ 19; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Accordingly, plain error does not exist "unless the appellant can establish that the outcome of the trial would have been different but for the trial court's allegedly improper action." *Payne* at ¶ 17; *Stone* at ¶ 19.

{¶ 18} Ohio's venue statute, R.C. 2901.12, provides that the "trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). R.C. 2901.12(H) addresses venue when an offender commits offenses in different jurisdictions as part of a course of criminal conduct and states:

---

6. Though the trial judge requested defense counsel combine his Crim.R. 29 motion, any renewal of that motion, and his closing argument, we nonetheless find that a Crim.R. 29 motion was made in this case.

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

* * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

* * *

(5) The offenses involved the same or a similar modus operandi.

{¶ 19} Appellant was charged with engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity."

{¶ 20} An "enterprise" includes a "partnership, * * * organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C); *see State v. Baker*, 12th Dist. No. CA2011-08-088, 2012-Ohio-887, ¶ 10. R.C. 2923.31(E) defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there had been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." For purposes of this case, "corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" a violation of R.C. 2925.03 (drug trafficking). R.C. 2923.31(I)(2)(c).

{¶ 21} With the offense of engaging in a pattern of corrupt activity, the state was

alleging that appellant worked with Geraci's enterprise with the purpose of selling steroids and making money. As such, appellant associated with Geraci's steroid operation and, by direct and indirect means, participated in the affairs of that enterprise through a pattern of corrupt activity. The state presented evidence that Geraci ran a steroid operation out of his home and office in Hamilton County. Appellant was a distributor for that operation, purchasing steroids from Geraci while in Hamilton County and selling 75% of those steroids at unknown locations. Geraci, as well as other distributors involved in the steroid operation, sold steroids while in Warren County.

{¶ 22} Consequently, evidence was presented at trial that the steroid operation was, in part, conducted in Warren County. Though the evidence demonstrated that appellant was not directly involved in the Warren County sales, his association with the steroid enterprise extended into those areas where the tentacles of the criminal enterprise touched, including Warren County. *State v. Yates*, 5th Dist. No. 2009CA0059, 2009-Ohio-6622, ¶ 62.

{¶ 23} Therefore, at least one element of the offense of engaging in a pattern of corrupt activity took place in Warren County. As venue is proper "in any county in which a portion of the corrupt activity occurred or in which an organization formed for the purpose of engaging in corrupt activity is based," the trial court did not err in finding venue in Warren County. *State v. Giffin*, 62 Ohio App.3d 396 (10th Dist.1991); *Yates* at ¶ 52.

{¶ 24} In addition, evidence was presented that the engaging in a pattern of corrupt activity and drug trafficking charges were committed as a course of conduct in that they involved the same modus operandi, were committed by appellant and others in the same capacity or relationship (the use of the locker system), and were committed in furtherance of the same purpose or objective (to sell steroids and make money). R.C. 2901.12(H); *see also State v. Koval*, 12th Dist. No. CA2005-06-083, 2006-Ohio-5377, ¶ 24-25; *Giffin* at 400-402; *Yates* at ¶ 62.

{¶ 25} Therefore, we find that venue in Warren County was appropriate on the engaging in a pattern of corrupt activity charge as well as on all charges within appellant's course of criminal conduct. Accordingly, appellant's sixth assignment of error is overruled.

{¶ 26} Assignment of Error No. 5:

{¶ 27} THE TRIAL COURT ERRED IN NOT DISMISSING COUNTS ONE THROUGH THIRTY-ONE (1-31) OF THE INDICTMENT AS THE COUNTS WERE LEGALLY INSUFFICIENT TO STATE A CRIME.

{¶ 28} In his fifth assignment of error, appellant contends the trial court erred in not dismissing Counts 1 through 31 of the indictment, as these counts did not sufficiently identify the controlled substance allegedly trafficked. Specifically, appellant takes issue with the state's use of "street names" rather than the term "anabolic steroids" to identify the controlled substances in the indictment.

{¶ 29} Appellant failed to timely object to this alleged defect in the indictment. Therefore, appellant has waived all but plain error on appeal. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-2830, paragraph three of the syllabus. As stated above, "an alleged error is plain error only if the error is 'obvious' and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Freeze*, 12th Dist. No. CA2011-11-209, 2012-Ohio-5840, ¶ 30; *Payne*, 2007-Ohio-4642 at ¶ 16.

{¶ 30} "[T]he Ohio Constitution guarantees an accused that the essential facts constituting the offense for which he is tried will be found in the indictment by the grand jury." *State v. Jackson*, 134 Ohio St.3d 184, 2012-Ohio-5561, ¶ 12. "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Id.* at ¶ 13, quoting *State v. Childs*, 88 Ohio St.3d 558, 565 (2000).

{¶ 31} In *Jackson*, the Ohio Supreme Court recently held that "for the purpose of identifying the drug involved in a drug-trafficking offense under R.C. 2925.03(A), an indictment is sufficient if it names the schedule in which the drug appears." *Id.* at paragraph one of the syllabus. The court noted "that the *schedule* of the drug involved" sufficiently puts the defendant "on notice of the severity of the offense, i.e., trafficking or aggravated trafficking." (Emphases sic.) *Id.* at ¶ 20, citing *State v. Headley*, 6 Ohio St.3d 475, 479 (1983).

{¶ 32} In this case, the indictment lists 31 counts of drug trafficking, each asserting that appellant "did, knowingly, prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute * * * a Schedule III controlled substance[.]" The 31 counts additionally provide a name for the controlled substance, such as "S Cut," "Testosterone 450," and "Sust 250."[7] Though containing street names, the indictment specifically states that the trafficking charges each involved a Schedule III controlled substance. Therefore, the indictment satisfies *Jackson* and, consequently, the trial court did not commit plain error by not dismissing Counts 1 through 31 of the indictment. Accordingly, appellant's fifth assignment of error is overruled.

{¶ 33} Assignment of Error No. 1:

{¶ 34} THE EVIDENCE PRODUCED AT TRIAL WAS LEGALLY INSUFFICIENT TO FIND APPELLANT GUILTY.

{¶ 35} In his first assignment of error, appellant generally argues that his 31 drug trafficking convictions should be overturned as unsupported by sufficient evidence. Specifically, beyond the issue of venue, which has already been addressed above, appellant contends that the state failed to show (1) that the steroids in question were controlled

---

7. Agent Burk testified at the bench trial that these names are what the anabolic steroids are commonly referred to by users.

substances, i.e., anabolic steroids, (2) that appellant prepared for shipment, shipped, transported, delivered, prepared for distribution, or otherwise distributed anabolic steroids, and (3) that appellant knew or had reasonable cause to know that these steroids were intended for sale or resale.

{¶ 36} When reviewing the sufficiency of the evidence underlying a criminal conviction, the function of an appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 37} A review of the sufficiency of the evidence does not require this court to determine the witnesses' credibility. *State v. Renner*, 12th Dist. No. CA2002-08-033, 2003-Ohio-6550, ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Rather, this court simply reviews the evidence submitted to determine whether, if believed, it would support a finding of guilt. *Id.*

{¶ 38} Appellant was found guilty of 13 counts of drug trafficking in violation of R.C. 2925.03(A)(2), which provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person."

**Controlled Substances**

{¶ 39} Appellant first argues that the state failed to prove that any steroids in this case were controlled substances and, more specifically, anabolic steroids. Specifically, appellant takes issue with the state's reliance on Geraci's testimony to prove that the steroids he sold

to appellant were actually anabolic steroids.

**{¶ 40}** According to R.C. 3719.01(C), a "controlled substance" is "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.41(E)(1) defines the term "anabolic steroids" as "any drug or hormonal substance that is chemically and pharmacologically related to testosterone * * * and that promotes muscle growth" and includes, but is not limited to, "testosterone." Anabolic steroids constitute a Schedule III controlled substance. R.C. 3719.41.

**{¶ 41}** "The state may rely upon circumstantial evidence in proving that a crime was committed." *Koval*, 2006-Ohio-5377 at ¶ 61, citing *State v. Maranda*, 94 Ohio St. 364, 371 (1916). "A layperson can provide opinion testimony regarding the identity of controlled substances provided the opinion is based upon a sufficient foundation of experience and knowledge of the substance at issue." *Id.* at ¶ 62, citing *State v. Foti*, 11th Dist. No. 2001-L-020, 2003-Ohio-796, ¶ 51. Specifically, the Ohio Supreme Court has held that the "experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *State v. McKee*, 91 Ohio St.3d 292, 297, 2001-Ohio-41; *Id.* at ¶ 63; *State v. Miles*, 3d Dist. No. 4-02-28, 2003-Ohio-1370; *State v. Singleton*, 11th Dist. No. 2002-L077, 2004-Ohio-1517. This is permissible, as scientific testing of purportedly illegal substances is not always available, as "by their nature, [illegal drugs] are sold or consumed." *Koval* at ¶ 64.

**{¶ 42}** In this case, Geraci testified that he had been a steroid user since 2006 and a distributor since 2009. In 2010, Geraci began exclusively selling steroids he received from Herbort, which contained a Synergy Pharmaceutical label. Geraci stated that he used 95% of the types of steroids he sold and had never had a complaint that the steroids were "bad" or did not work. In fact, according to Geraci, appellant once stated that the steroids Geraci sold

were of "good quality."

**{¶ 43}** In 2011, Geraci, and another of his distributors, Haberstroh, both sold steroids to Agent Burk while he was working as an undercover agent. Those steroids also contained Synergy Pharmaceutical labels and were each sold in identical vials.[8] The steroids Agent Burk purchased from Geraci and Haberstroh were tested and were found to contain Schedule III anabolic steroids.

**{¶ 44}** Given the evidence presented regarding Geraci's extensive knowledge of steroids, and after reviewing the record under the applicable standard for a sufficiency challenge, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt the controlled substances element of the offense of trafficking in drugs.

## Distribution

**{¶ 45}** Appellant next contends that the state failed to prove with sufficient evidence that appellant prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed anabolic steroids knowing or having reasonable cause to believe that the steroids were intended for sale or resale.

**{¶ 46}** The offense of drug trafficking defined by R.C. 2925.03(A)(2) "requires proof of more than the mere "possession" of a controlled substance." *State v. Powell*, 87 Ohio App.3d 157, 170 (8th Dist.1993). Rather, "drug trafficking under this provision requires demonstrating some form of the proscribed trafficking conduct incident to a drug sale." *Id.* In order to sustain a conviction for drug trafficking, the state must produce direct or circumstantial evidence that appellant did one of the following: (1) knowingly prepared the steroids for shipment; (2) shipped, transported, or delivered the steroids; (3) prepared the steroids for distribution; or (4) distributed the steroids. *See State v. Anderson*, 8th Dist. No.

---

8. Agent Burk testified that the only difference between the vials was that the "purported content varied depending on what we ordered."

- 13 -

69620, 1996 WL 684331, * 4 (Nov. 27, 1996).

{¶ 47} In this case, appellant admitted to Agent Burk and Detective Couch that he purchased steroids from Geraci at Geraci's residence and at the CMC Office Center. Appellant would then transport the steroids and deliver approximately 75% of them to his 10 customers while on the "west side of town." Specifically, appellant stated that he would meet these customers in a "lot somewhere" and sell the steroids.

{¶ 48} Based upon our review of the record, sufficient evidence was presented that, if believed, would allow a rational trier of fact to find that the state proved beyond a reasonable doubt the shipment and distribution element of the offense of trafficking in drugs.

## Sale or Resale

{¶ 49} Finally, appellant argues that the state failed to prove with sufficient evidence that he transported a controlled substance while knowing or having reasonable cause to believe that the steroids were intended for sale or resale by the offender or another person. R.C. 2925.03(A)(2).

{¶ 50} In this case, Agent Burk testified that appellant admitted to selling 75% of the steroids that he purchased from Geraci. Specifically, Agent Burk stated:

> [Appellant] made reference to only three types of steroid (sic) would be essentially what he had purchased for himself. Anything else that was contained on our records were steroids that he was supplying to his ten customers. He said he placed approximately, each order he placed was approximately $600.00 at a time and he also stated that he would add, he initially added $20.00 to the price of each bottle over his cost but then later said it was sometime [$10] sometimes at $20.00 he would mark the bottle up for resale, and he also indicated a mark up on the anabolic steroid tablets as well.

Furthermore, the trial court was presented with the tape of Agent Burk's interview with appellant, where the trier of fact could actually hear appellant describing how he priced and sold the steroids to his 10 customers.

{¶ 51} Thus, after reviewing the record under the applicable standard for a sufficiency challenge, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt all of the requisite elements of the offense of trafficking in drugs, including the intent to sell element. Accordingly, appellant's first assignment of error is overruled.

{¶ 52} Assignment of Error No. 2:

{¶ 53} THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONY OF MATT GERACI AS TO WHAT WAS CONTAINED IN THE SUBSTANCES HE SOLD TO APPELLANT.

{¶ 54} In his second assignment of error, appellant asserts the trial court improperly admitted hearsay evidence from Geraci which the state used to prove that the substances appellant purchased from Geraci were, in fact, anabolic steroids. Specifically, appellant alleges that Geraci's testimony that the steroids were actually controlled substances was based solely upon what he was told by Herbort.

{¶ 55} "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *In re Bays*, 12th Dist. No. CA2003-02-026, 2004-Ohio-915, ¶ 7, citing *State v. Robb*, 88 Ohio St.3d 59, 68 (2000). Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68.

{¶ 56} In this case, the trial court permitted Geraci to testify that he sold steroids to appellant and that appellant was one of his top distributors. Based upon Geraci's reported experience in the handling, sale, and use of steroids, we cannot say that the trial court abused its discretion in permitting the admission of that testimony to show that the drugs at issue were, in fact, Schedule III anabolic steroids. Though Geraci received the vials of

steroids and Synergy Pharmaceutical labels from Herbort, and was told by Herbort which vial contained what type of steroid, Geraci still had an extensive knowledge of the different varieties of steroids he sold and their various uses.

{¶ 57} As Geraci independently testified that he had used these steroids, that the steroids worked well, that he was familiar with steroids, and that he had never had a complaint from his purchasers and distributors that the steroids were ineffective, we cannot say that the trial court erred in admitting his testimony at trial. Accordingly, appellant's second assignment of error is overruled.

{¶ 58} Assignment of Error No. 3:

{¶ 59} THE TRIAL COURT ERRED WHEN IT DETERMINED THAT ANY AMOUNTS OF ILLEGAL DRUGS EXCEEDED OR EQUALED A "BULK AMOUNT."

{¶ 60} In his third assignment of error, appellant alleges the state produced insufficient evidence that appellant trafficked in an amount of drugs greater than the bulk amount ("bulk enhancement"). Specifically, appellant contends that, for Counts 5, 17, and 23 of the indictment, the state failed to present any evidence as to what appellant may have done with the bulk amount of these steroids, including selling them.

{¶ 61} As stated above, when reviewing the sufficiency of the evidence underlying a criminal conviction, the function of an appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d at paragraph two of the syllabus.

{¶ 62} As noted above, appellant was found guilty of trafficking in drugs in violation of R.C. 2925.03(A)(2), which provides that no person shall knowingly "prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is

- 16 -

intended for sale or resale by the offender or another person." Generally, drug trafficking is a felony of the fifth degree. R.C. 2925.03(C)(2). However, the felony level may be enhanced if the amount of drugs involved equals or exceeds the bulk amount. *Id.* R.C. 2925.01(D)(5) defines "bulk amount" as "[a]n amount equal to or exceeding two hundred solid dosage units, sixteen grams, or sixteen milliliters of a compound, mixture, preparation, or substance that is or contains any amount of a schedule III anabolic steroid."

### Count 5

{¶ 63} In Count 5, the state alleged that, on August 24, 2010, appellant trafficked in "testosterone enanthate 300" in an amount equal to or exceeding the bulk amount (16mL) but less than five times the bulk amount (59mL).

{¶ 64} Geraci testified at trial that Invoice 173 indicated that appellant purchased "Test E 300" from Geraci. Geraci explained that the term "Test E" refers to "testosterone enanthate" and that he sold appellant three 10mL vials of the steroids. Geraci described testosterone enanthate as a steroid used to increase a person's level of testosterone. In addition, Agent Burk testified that appellant admitted to selling 75% of the steroids he purchased from Geraci. Although appellant told Agent Burk that he purchased only three types of steroids for his personal use, appellant did not identify these steroids.

{¶ 65} Thus, the testimony at trial revealed that appellant was a distributor of steroids and that he sold 75% of the steroids that he purchased. On August 24, 2010, appellant purchased approximately 30mL of testosterone enanthate from Geraci. If appellant only had the purpose of reselling 75% of the testosterone enanthate that he purchased, that would be a sale of roughly 22.5mL of steroids. As the bulk amount is 16mL of liquid anabolic steroids, and reviewing the record in a light most favorable to the prosecution, we conclude evidence was presented which, if believed, is sufficient to support appellant's drug trafficking in testosterone enanthate 300 with a bulk enhancement.

**Count 17**

**{¶ 66}** In Count 17, the state alleged that, on May 18, 2011, appellant trafficked in "Testosterone 450" in an amount equal to or exceeding the bulk amount (16mL) but less than five times the bulk amount (59mL).

**{¶ 67}** Geraci testified that, according to Invoice 862, on May 18, 2011 appellant purchased six vials of "Test 450," which he identified as a mixture of testosterone such as testosterone enanthate and testosterone propionate. Geraci further explained that Test 450 was a "special blend" of steroids that could only be purchased from Geraci or Geraci's boss, Ron Herbort, who made Test 450. Geraci also testified at trial that each "vial" of steroids he sold contained approximately 10mL and, thus, the six vials of Test 450 appellant purchased contained roughly 60mL of steroids. Again, Agent Burk's testimony provided that appellant admitted to selling 75% of all steroids he purchased.

**{¶ 68}** Therefore, according to the testimony at trial, on May 18, 2011, appellant purchased approximately 60mL of testosterone 450 from Geraci at the CMC Office Center with the purpose of reselling 75%, or 45mL of steroids. Reviewing the record in a light most favorable to the prosecution, we conclude evidence was presented which, if believed, is sufficient to support appellant's drug trafficking in testosterone 450 with a bulk enhancement.

**Count 23**

**{¶ 69}** In Count 23, the state alleged that, on June 8, 2011, appellant trafficked in "Testosterone 450" in an amount equal to or exceeding five times the bulk amount (60mL) but less than 50 times the bulk amount (800mL).

**{¶ 70}** Geraci testified that, according to Invoice 914, on June 8, 2011, appellant purchased ten vials of Test 450. Geraci's testimony regarding Test 450 for Count 23 was the same as his testimony for Count 17. Again, Agent Burk's testimony provided that appellant admitted to selling 75% of all steroids he purchased.

{¶ 71} Thus, according to the testimony at trial, on June 8, 2011, appellant purchased 160mL of testosterone 450 from Geraci at the CMC Office Center with the purpose of reselling approximately 75%, or 120mL of steroids. Reviewing the record in a light most favorable to the prosecution, we conclude evidence was presented which, if believed, is sufficient to support appellant's drug trafficking in testosterone 450 with a bulk enhancement.

{¶ 72} Based upon the foregoing, we find that the state provided sufficient evidence to support appellant's bulk enhancement specifications under Counts 5, 17, and 23. Accordingly, appellant's third assignment of error is overruled.

{¶ 73} Assignment of Error No. 4:

{¶ 74} THE TRIAL COURT ERRED WHEN IT FOUND THAT ANY DRUG TRANSACTIONS OCCURRED WITHIN THE VICINITY OF A SCHOOL.

{¶ 75} In his fourth assignment of error, appellant challenges the enhancement placed upon his convictions for drug trafficking while in the vicinity of a school and alleges that the state failed to provide sufficient evidence that a school existed in the vicinity of the drug transactions. Specifically, appellant contends that Detective Couch's testimony that a "daycare slash also kindergarten" called "Kinder Garden" is located within 1,000 feet of the CMC Office Center was insufficient proof that the Kinder Garden is an actual "school" pursuant to R.C. 2925.01(Q).

{¶ 76} This same issue was raised and addressed by this court in *State v. Howard*, 12th Dist. No. CA2012-04-034, 2013-Ohio-1489, ¶ 52-70. In *Howard*, we determined that "circumstantial evidence may be used to prove that a building falls under the definition of 'school' required by R.C. 2925.01(Q)" and, furthermore, that Detective Couch's testimony was sufficient "to support the school enhancement specification." *Id*. at ¶ 66. Thus, for these reasons, and those more fully outlined in *Howard*, we find that sufficient evidence was

produced at trial to support the school enhancement specifications placed upon appellant.[9] Accordingly, appellant's fourth assignment of error is overruled.

{¶ 77} Assignment of Error No. 7:

{¶ 78} THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY.

{¶ 79} In his seventh assignment of error, appellant argues the state failed to present sufficient evidence to support appellant's conviction for engaging in a pattern of corrupt activity. Specifically, appellant contends that, based upon the above arguments, appellant's convictions for Counts 9, 12, 15, 16, 17, 19, 23, and 26 of the indictment must be overturned. Without a conviction for at least one of these felonies of the first, second, or third degree, appellant's conviction for engaging in a pattern of corrupt activity must, likewise, be overturned.

{¶ 80} As stated above, R.C. 2923.32(A)(1) provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity." R.C. 2923.31(E) requires "that at least one of the instances of corrupt activity giving rise to a pattern of corrupt activity must constitute a felony." *State v. Royce*, 12th Dist. Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA92-09-026, 1993 WL 534691, * 3 (Dec. 27, 1993). "[I]f at least one of the incidents of corrupt activity is a felony of the first, second, or third degree, * * * engaging in a pattern of corrupt activity is a felony of the first degree." R.C. 2923.32(B); *State v. Bondurant*, 4th Dist. Nos. 11CA25, 11CA27, 2012-Ohio-4912, ¶ 44.

{¶ 81} In this case, appellant was convicted of seven counts of drug trafficking, felonies of the third degree, and one count of drug trafficking, a felony of the second degree.

___

9. It should be noted that the state and appellant stipulated to the existence of the Kinder Garden School and stipulated that the Kinder Garden School "operates a kindergarten program pursuant to R.C. 3321.01" and is

Contrary to appellant's contentions, these convictions were properly venued in Warren County, were properly indicted, and were supported by sufficient evidence. As such, appellant's argument that his engaging in a pattern of corrupt activity conviction must be overturned due to a lack of a first, second, or third-degree underlying felony is unpersuasive. Accordingly, appellant's seventh and final assignment of error is overruled.

{¶ 82} Judgment affirmed.

HENDRICKSON, P.J. and RINGLAND, J., concur.

---

"taught by a teacher who holds a valid certification/educator licensed by the Ohio Department of Education."