[Cite as *State v. Montoya*, 2013-Ohio-3312.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                               :

    Plaintiff-Appellee,                    :                CASE NO.  CA2012-02-015

                                           :                O P I N I O N
- vs -                                                            7/29/2013
                                           :

ANTONIO A. MONTOYA,                         :

    Defendant-Appellant.                   :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011 CR 0800


D. Vincent Faris, Clermont County Prosecuting Attorney, David Hoffmann, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Christine Tailer, P.O. Box 14, Georgetown, Ohio 45121, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Antonio A. Montoya, appeals from a decision in the Clermont County Court of Common Pleas convicting him of two counts of trafficking in heroin, three counts of possession of heroin, and one count of engaging in a pattern of corrupt activity.  For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2}  Appellant's convictions stem from undercover buys that occurred on three separate dates, August 9, 2011, August 12, 2011, and August 30, 2011.  A confidential

informant arranged for an undercover officer from the Clermont County Narcotics Unit, Marc Sorbello, to purchase heroin from a person known as Mike, whose real name is Eduardo Tapia ("co-defendant"). A buy was scheduled for August 9, 2011. At a prearranged time, Officer Sorbello arrived at an apartment and waited for appellant and co-defendant. When they arrived, co-defendant offered to sell Officer Sorbello heroin at a price of $100 per gram. When Officer Sorbello asked if the price could be lowered, co-defendant stated that they would have to "check with our bosses." After Officer Sorbello agreed to the $100 per gram price and handed co-defendant $200, co-defendant produced a clear plastic sandwich bag filled with at least 20 marble-sized balloons. Co-defendant reached into the bag, took out two balloons, and handed them to Officer Sorbello. Co-defendant then handed the bag to appellant and appellant placed it into his pocket.

{¶ 3} Officer Sorbello then inquired whether the two men had any half-gram balloons, and handed co-defendant $60. Appellant then retrieved the clear plastic sandwich bag from his pocket, looked in the bag, selected a balloon, and gave it to Officer Sorbello. When Officer Sorbello left, appellant had the bag with the remaining balloons in his pocket. During the entire transaction, Officer Sorbello only spoke to co-defendant and co-defendant spoke to appellant in Spanish.

{¶ 4} The next transaction took place on August 12, 2011 in a McDonald's parking lot after Officer Sorbello called co-defendant to arrange another buy. Officer Sobello then waited by a picnic table outside. Soon, a vehicle driven by appellant pulled into the parking lot. Officer Sorbello approached the vehicle on the passenger side to speak with co-defendant. Officer Sorbello handed co-defendant what he thought was the buy money of $200. However, Agent Sorbello actually handed co-defendant only $4. Co-defendant pulled out a clear plastic sandwich bag full of at least 20 different colored balloons from the glove compartment. When co-defendant realized that Officer Sorbello only gave him approximately

$4, co-defendant pulled a 9 mm pistol out of the glove compartment and stated "don't f * * * with me." Eventually, the transaction was completed when Officer Sorbello handed co-defendant $200. Co-defendant then reached into the bag, pulled out two balloons, and handed them to Officer Sorbello.

{¶ 5} The last transaction took place on August 30, 2011, and involved a different undercover officer. Shawn Michael Zint, a Union Township Police Officer assigned to the Clermont County Narcotics Unit, was contacted by co-defendant asking if he wanted to "do business." Eventually, a buy was arranged to be conducted at Wendy's by the Eastgate Mall. However, after arriving at Wendy's, the buy moved locations to the "Best Buy and Dick's up on Eastgate Boulevard." Once in the parking lot near the new location, Officer Zint approached a vehicle in which co-defendant was driving with appellant in the backseat. Officer Zint handed co-defendant $220 to purchase two grams of heroin. Co-defendant motioned to appellant in the backseat. Appellant then reached under his leg, retrieved a clear plastic bag full of over 20 balloons, and randomly selected two. Appellant handed the two balloons to Officer Zint.

{¶ 6} When appellant and co-defendant left the parking lot, officers who were conducting surveillance of the transaction followed the vehicle onto I-275. A traffic stop was then made by Union Township Police Officers in marked cruisers. While money was found in three different locations in the vehicle, including $220 in the center console, $1400 in the pocket behind the driver's seat, and $900 in a dress shoe in the trunk, no heroin balloons were ever recovered. Furthermore, the recovered identification card of co-defendant revealed that co-defendant was a minor.

{¶ 7} Brian Scowden, the chief drug analyst at the Hamilton County Coroner's Office, tested six of the seven balloons purchased by the undercover officers. Scowden tested two of the three balloons recovered by Officer Sorbello on August 9, 2011, and found both to

contain heroin. One balloon weighed 0.96 grams, and the second balloon weighed 0.88 grams. Scowden tested both balloons recovered from the August 12, 2011 transaction and found both to contain heroin. The balloons weighed 1.12 grams and 1.04 grams. The balloons recovered by Officer Zint on August 30, 2011, were also tested, confirmed to contain heroin, and weighed 1.10 grams and 1.01 grams.

{¶ 8} The trial court found appellant guilty of three counts of trafficking in heroin in violation of R.C. 2925.03(A)(1), felonies of the fourth degree. Appellant was also found guilty of one firearm specification, one juvenile specification, and a forfeiture specification. Additionally, the trial court found appellant guilty of three possession charges in violation of R.C. 2925.11(A), second-degree felonies when the amount of heroin equals or exceeds 10 grams but is less than 50 grams. Finally, appellant was found guilty of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony in the first degree. At sentencing, the trial court merged the August 9, 2011 and August 12, 2011 possession offenses and sentenced appellant to a total of eight years in prison.

{¶ 9} Appellant now appeals, and asserts six assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} APPELLANT'S CONVICTIONS ON COUNT THREE, TRAFFICKING IN HEROIN, AND COUNT SIX, POSSESSION OF HEROIN, WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN THAT THE STATE FAILED TO INTRODUCE SUFFICIENT EVIDENCE OF VENUE.

{¶ 12} Appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because proper venue was not established in Clermont County, Ohio. Specifically, appellant argues that his convictions on counts three and six were against the manifest weight of the evidence for trafficking and possession of heroin on August 30, 2011, because

the state only presented evidence that the acts occurred at the "Best Buy and Dicks up on Eastgate Boulevard." Appellant asserts that the acts could have occurred at another Best Buy and Dicks in the area and not in Clermont County. Even if true, we find that the trial court did not err in finding Clermont County the appropriate venue.

{¶ 13} A determination that the facts are sufficient to establish venue will not be disturbed on appeal unless it is against the manifest weight of the evidence. *State v. Gilmore*, 12th Dist. No. CA2002-06-049, 2003-Ohio-1445, ¶ 31. A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. *State v. Rader*, 12th Dist. No. CA2010-11-310, 2011-Ohio-5084, ¶ 32.

{¶ 14} "Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state." *State v. Mielke*, 12th Dist. No. CA2012-08-079, 2013-Ohio-1612, ¶ 14. "The importance of venue is to give the defendant the right to be tried in the vicinity of his alleged criminal activity." *Id.* The standard in establishing venue is whether the defendant has a "significant nexus" with the county where the trial was held. *Id.* While venue is not a material element of any offense charged, the state "must prove beyond a reasonable doubt that the crime charged was committed in the county where the indictment was returned and the trial held[.]" *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, ¶ 12.

{¶ 15} Ohio's venue statute, R.C. 2901.12, provides that the "trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(H) addresses venue when an offender commits offenses in different jurisdictions as part of a course of criminal conduct and states:

When an offender, as part of a course of criminal conduct,

commits offenses in different jurisdictions, the offender may be tried for all those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

* * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

* * *

(5) The offenses involved the same or a similar modus operandi.

{¶ 16} In this case, undisputed testimony was given regarding Clermont County as the location for the August 9, 2011 and August 12, 2011 transactions. However, there was a lack of specific testimony regarding the proper jurisdiction for the August 30, 2011 transaction. We find that the three transactions constituted a course of conduct. While the transactions occurred over the period of a month, they had the same purpose or objective: for appellant and co-defendant to sell heroin to a person as a result of a prearranged plan. Additionally, the transactions involved a similar modus operandi. All three transactions were prearranged. Appellant and co-defendant were the only two people involved in each transaction besides the officers. A clear plastic sandwich bag full of balloons was produced whereby either appellant or co-defendant appeared to randomly select balloons and hand them to an undercover officer in exchange for money. The state provided sufficient evidence and the finding is not against the manifest weight of the evidence as there is competent, credible evidence to establish a clear course of conduct. Consequently, we find that the trial court did not err in finding Clermont County a proper venue for all three transactions. Appellant's first assignment of error is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT IMPROPERLY CONVICTED APPELLANT WHEN THE EVIDENCE PRESENTED AT TRIAL DID NOT CONFORM WITH THE BILL OF PARTICULARS.

{¶ 19} Appellant asserts two arguments within his second assignment of error, which we will address in turn. First, appellant argues he did not have notice of counts one, two, and three because the bill of particulars clearly set forth that appellant was the principal offender on these counts rather than only complicit to trafficking. Consequently, appellant asserts that he was prejudiced because he only defended against the actual act of selling rather than the act of complicity to any sales. We disagree.

{¶ 20} "A charge of complicity may be stated in terms of [the complicity statute] or in terms of the principal offense." R.C. 2923.03(F). This statute provides adequate notice that complicity may be contemplated even where the indictment is phrased as if the defendant were the principal offender. *State v. Herring*, 94 Ohio St.3d 246, 251 (2002). The purpose of a bill of particulars is "'to clarify the allegations in the indictment so that the accused may know with what he is charged in order to prepare his defense.'" *State v. Shirley*, 12th Dist. No. CA2012-07-127, 2013-Ohio-1948, ¶ 20, quoting *Foutty v. Maxwell*, 174 Ohio St. 35, 38 (1962).

{¶ 21} Appellant was charged under the principal offense of trafficking in violation of R.C. 2925.03(A) on three occasions and was found complicit to trafficking on two occasions. Nevertheless, there was adequate notice of the potential of conviction of complicity within the bill of particulars. Although the word "complicity" was not used, the language in the bill of particulars leaves little room for doubt that the state preserved for itself the option to pursue a complicity theory of prosecution:

> **Count #1 Trafficking in Heroin:**
> * * * on or about the 9th day of August, 2011, in Clermont County, Ohio, the defendant knowingly sold or offered to sell a

controlled substance, and the drug involved in the violation was heroin, and there were juveniles in the vicinity. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 5 Johnny Appleseed Dr. *The defendant was the driver and consulted with the juvenile passenger, who he had hand the officer the balloons of heroin * * ***

**Count #2 Trafficking in Heroin:**
* * * on or about the 12th day of August, 2011, in Clermont County, Ohio, the defendant knowingly sold or offered to sell a controlled substance, and the drug involved in the violation was heroin, and there were juveniles in the vicinity. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 4025 Mt. Carmel Tobasco Rd. *The defendant was the driver and consulted with the juvenile, who he had hand the officer the balloons of heroin *** During the transaction, the juvenile passenger reached into the glove compartment and pulled out a Hi Point Semi automatic pistol, brandishing it at the undercover officer.*

**Count #3 Trafficking Heroin: [sic]**
* * * on or about the 30th day of August, 2011, in Clermont County, Ohio, the defendant knowingly sold or offered to sell a controlled substance, and the drug involved in the violation was heroin, and there were juveniles in the vicinity. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 650 Eastgate South Dr. *The defendant was the driver and consulted with the juvenile, who he had hand the officer the balloons of heroin * * ***

**Count #4 Possession Heroin: [sic]**
* * * on or about the 9th day of August, 2011, in Clermont County, Ohio, the defendant knowingly obtained, possessed, or used a controlled substance, and the drug involved in the violation was heroin or a compound, mixture, preparation or substance containing heroin, and the amount of the drug equaled or exceeded ten grams but was less than fifty grams. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 5 Johnny Appleseed Dr. *The defendant was the driver and consulted with the juvenile passenger, who he had hand the officer the balloons of heroin.* There were an additional 12 to 20 balloons of heroin in their possession after the transaction.

**Count #5 Possession Heroin: [sic]**
* * * on or about the 12th day of August, 2011, in Clermont County, Ohio, the defendant knowingly obtained, possessed, or used a controlled substance, and the drug involved in the violation was heroin or a compound, mixture, preparation or

substance containing heroin, and the amount of the drug equaled or exceeded ten grams but was less than fifty grams. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 4025 Mt. Carmel Tobasco Rd. *The defendant was the driver and consulted with the juvenile, who he had hand the officer the balloons of heroin.* There were an additional 12 to 20 balloons of heroin in their possession after the transaction. *During the transaction, the juvenile passenger reached into the glove compartment and pulled out a Hi Point Semi automatic pistol, brandishing it at the undercover officer.*

**Count #6 Possession of Heroin:**
* * * on or about the 30th day of August, 2011, in Clermont County, Ohio, the defendant knowingly obtained, possessed, or used a controlled substance, and the drug involved in the violation was heroin or a compound, mixture, preparation or substance containing heroin, and the amount of the drug equaled or exceeded ten grams but was less than fifty grams. Specifically, the defendant sold 2 grams of heroin to an undercover officer at 650 Eastgate South Dr. *The defendant was the driver and consulted with the juvenile, who he had hand the officer the balloons of heroin.* There were an additional 12 to 20 balloons of heroin in their possession after the transaction. * * *

(Emphasis added.) Appellant's claim that he had no notice of his role as a complicitor is disingenuous and unsupported by the bill of particulars itself. Thus we need look no further on the issue, as the state correctly provided sufficient notice of appellant's conduct.

{¶ 22} Second, appellant argues that the state should have moved to amend the bill of particulars when Officer Sorbello testified that the August 12, 2011 incident took place on Johnny Appleseed Drive rather than Old Orchard as set forth in the indictment. Appellant asserts he was unfairly prejudiced because if the state would have moved to amend the indictment, appellant would have had an opportunity to request a continuance to evaluate the allegations of the incident that allegedly occurred on Johnny Appleseed Drive. Following such an evaluation, appellant asserts that he may have decided to negotiate a plea rather than take the case to trial. We disagree.

{¶ 23} The purpose of a bill of particulars is limited in scope, and is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense." *State v.*

*Sellards*, 17 Ohio St.3d 169, 171 (1985). A bill of particulars informs a defendant of the nature of the charges against him with a sufficient amount of precision that he may adequately prepare for trial, avoid surprise, or plead his acquittal or conviction in bar of another prosecution for the same offense. *State v. Sessler*, 3d Dist. No. 3-06-23, 2007-Ohio-4931, ¶ 11, quoting *State v. Miniard*, 4th Dist. No. 04CA1, 2004-Ohio-5352, ¶ 21-23. However, "[a] bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Id.* "A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not *per se* impermissible or necessarily fatal to a prosecution." *Sellards* at 171.

{¶ 24} Even a significant factual flaw in the bill of particulars is not reversible error unless the defendant can establish prejudice wherein he was denied a fair trial. Crim.R. 33(E)(2) provides that "[n]o motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of * * * [a] variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby." *See State v. Lovings*, 10th Dist. No. 97APA05-656, 1997 WL 798328 (Dec. 23, 1997) (no prejudice shown where defendant was aware of a discrepancy as to the address in the bill of particulars but did not attempt to resolve it)*; State v. Williams*, 1st Dist. No. C-920869, 1993 WL 547184 (Dec. 1, 1993) (no prejudice found where the defendant did not show that the variance between the evidence presented at trial and the bill of particulars regarding the address of the offenses charged was misleading or prejudicial); *State v. Tijerina*, 3d Dist. No. 4-91-27, 1992 WL 292407 (Sept. 30, 1992) (no prejudice found where the defendant did not argue that the incorrect address in the bill of particulars was misleading or prejudicial, and where he did not seek a continuance when the variance was discovered at trial).

{¶ 25} At trial, appellant did not object to the variance during Officer Sorbello's

- 10 -

testimony on direct examination or cross-examination and did not argue any prejudice during his Crim.R. 29 motion for acquittal at the close of the state's case.[1] Appellant herein offered no explanation as to how or why he was prejudiced in defending against the charges by the listing of an erroneous address. Although appellant did not suggest any prejudice at trial, on appeal he did attempt to demonstrate some prejudice. It was argued on appeal that if the state had sought to amend the bill of particulars, appellant would have been in a position to seek a plea negotiation. This is an unfounded speculation about strategy, as there is no reason to believe the state would have offered plea negotiations at trial after amending the bill of particulars. Consequently, we cannot say appellant was prejudiced by the variance between the address given in the bill of particulars and that introduced in evidence at trial. Appellant's second assignment of error is overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT IMPROPERLY CONVICTED APPELLANT OF TRAFFICKING IN HEROIN AS SET FORTH IN COUNTS ONE, TWO, AND THREE, OF THE INDICTMENT, BASED ON THE ACTUAL TRIAL EVIDENCE.

{¶ 28} Appellant argues there was insufficient evidence to convict him of the trafficking charges. Specifically, appellant argues that because on August 9, 2011, he merely handed one-half gram of heroin to the undercover officer and the conversations between appellant and his co-defendant were conducted in Spanish, appellant could not have aided and abetted in the sale of heroin that exceeded one gram. Similarly, appellant argues that he could not have aided and abetted in the sale of heroin that exceeded one gram on August

---

1. Although appellant argued for acquittal in a Crim.R. 29 motion because the wrong address was listed in the bill of particulars, he did not demonstrate that he lacked notice of his alleged conduct or that he was prejudiced by the bill of particulars in providing a defense. In other words, while pointing out a technical problem with the bill of particulars, appellant never claimed such hampered his defense. Appellant did not claim surprise or seek a continuance, but strategically opted to seek an acquittal instead. However, in its consideration of the Crim.R. 29 motion, the trial court was correct in permitting the charge to conform to the evidence.

12, 2011, because he only drove to the scene of the buy. Consequently, appellant also argues he should not have been convicted of the firearm specification for August 12, 2011. Finally, appellant argues that there was insufficient evidence to convict him of trafficking in heroin in the vicinity of a juvenile on August 30, 2011, when the juvenile was the principal offender. We disagree.

{¶ 29} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.); *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing the sufficiency of the evidence, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 113, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Proof beyond a reasonable doubt is "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(E).

{¶ 30} In evaluating the sufficiency of the evidence, a court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *State v. Howland*, 12th Dist. No. CA2006-08-035, 2008-Ohio-521, ¶ 31, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). A reviewing court must not substitute its evaluation of witnesses' credibility for that of the trier of fact. *Howland* at ¶ 31.

{¶ 31} It is well-established that both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75; *State v. Crutchfield*, 12th Dist. No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. "'[C]ircumstantial

evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *McKnight* at ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990). A conviction based on purely circumstantial evidence is no less sound than a conviction based on direct evidence. *State v. Apanovitch*, 33 Ohio St.3d 19, 27 (1987).

**{¶ 32}** Appellant was convicted of trafficking in heroin in violation of R.C. 2925.03(A)(1) on three separate occasions. The trial court found appellant was complicit to the sale of heroin on August 9, 2011 and August 12, 2011, and the trial court found appellant to be the principal offender of the transaction that occurred on August 30, 2011. R.C. 2925.03(A)(1) provides: "(A) No person shall knowingly * * * [s]ell or offer to sell a controlled substance * * * [.]" "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Heroin is a Schedule I controlled substance. *See* R.C. 2925.03.

**{¶ 33}** "Complicity" is defined in R.C. 2923.03(A)(2) as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To aid and abet is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001), quoting Black's Law Dictionary 69 (7th Ed.1999). "Evidence of aiding and abetting may be shown by either direct or circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed." *Howland* at ¶ 34. However, the mere presence of a person at the scene of a crime is not enough in and of itself to prove the accused aided and abetted the principal. *Id.*

**{¶ 34}** First, we address appellant's August 9, 2011 trafficking conviction. At the

transaction which occurred on August 9, 2011, Officer Sorbello testified that appellant and co-defendant constantly talked back and forth in Spanish when Officer Sorbello was attempting to pay a lesser amount for the heroin than the agreed price. Officer Sorbello also testified that co-defendant handed him two balloons containing one gram of heroin each, then co-defendant handed the bag with the remaining balloons to appellant who put the bag in his pocket. When Sorbello asked if they had any one-half gram balloons of heroin, appellant retrieved the bag from his pocket and handed Officer Sorbello a one-half gram balloon. Appellant's presence before, during, and after the transaction, in addition to his participation in the discussion and sale of the one-half gram of heroin, shows that any rational trier of fact could find that appellant was complicit to trafficking in heroin beyond a reasonable doubt.

{¶ 35} Second, we address appellant's conviction for trafficking on August 12, 2011 with a firearm specification. To sustain a firearm specification, the state must prove beyond a reasonable doubt that the defendant possessed a firearm and that it was operable at the time of the offense. *State v. Murphy*, 49 Ohio St.3d 206 (1990), syllabus. A defendant may be convicted of an offense, which includes a firearm specification, where his co-defendant or uncharged accomplice utilized a firearm in the commission of the offense and the defendant is found to have acted as an accomplice. *State v. Salyer*, 12th Dist. No. CA2006-03-039, 2007-Ohio-1659, ¶ 30.

{¶ 36} In proving the operability of a firearm, the state need not produce the gun or offer direct, empirical evidence that the gun is operable. *Id.* at 209; *State v. Minter*, 12th Dist. No. CA2009-06-150, 2010-Ohio-594, ¶ 15. Rather, "a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 385 (1997). Proof of the operability of the firearm can also be established "by the testimony of lay witnesses who were in a position to observe the

instrument and the circumstances surrounding the crime." *Murphy* at syllabus; *State v. Minter*, 12th Dist. No. CA2009-06-150, 2010-Ohio-594, ¶ 15. "In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *Thompkins* at 385.

{¶ 37} At the transaction which occurred on August 12, 2012, appellant drove co-defendant to the prearranged meeting location and was present during the entire transaction. Additionally, when Officer Sorbello testified that when he accidently attempted to pay with $4 in change he received at McDonald's rather than the buy money, co-defendant, who was sitting in the passenger's seat, pulled out a .9 mm Highpoint gun from the glove compartment. Officer Sorbello testified that .9 mm Highpoint gun is a cheap, bulky firearm. When co-defendant pulled the gun, and stated "Don't F* * * with me," Officer Sorbello testified that he took these actions as a threat. Looking at this testimony in a light most favorable to the prosecution, a rational trier of fact could find complicity to trafficking in heroin with a gun specification to be proved beyond a reasonable doubt.

{¶ 38} Last, we discuss appellant's August 30, 2011 trafficking conviction with a juvenile specification. R.C. 2925.01(BB) provides:

> An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

The Ohio Supreme Court has stated that committing an offense in the vicinity of a juvenile requires strict liability. *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 34.

{¶ 39} In this case, regarding the August 30, 2011 transaction, Officer Zint testified

- 15 -

that appellant reached under his leg, pulled out a clear plastic sandwich bag with balloons, randomly selected two, and handed them to Officer Zint. Officer Zint also testified that co-defendant arranged the transaction and took the buy money from Officer Zint. When viewing the testimony in a light most favorable to the prosecution, the elements of trafficking in heroin can be proved beyond a reasonable doubt. Consequently, because there is no dispute that co-defendant was a juvenile at the time of the transaction and R.C. 2925.01(BB) requires strict liability, a rational trier of fact could find beyond a reasonable doubt that the offense was committed within the vicinity of a juvenile. Accordingly, appellant's third assignment of error is overruled.

{¶ 40} Assignment of Error No. 4:

{¶ 41} THE TRIAL COURT IMPROPERLY CONVICTED APPELLANT OF POSSESSION OF HEROIN AS SET FORTH IN COUNTS FOUR, FIVE, AND SIX OF THE INDICTMENT, BASED ON THE ACTUAL TRIAL EVIDENCE.

{¶ 42} Appellant argues that insufficient evidence exists for his possession of heroin convictions that allegedly occurred on August 9, 2011, August 12, 2011, and August 30, 2011. Specifically, appellant asserts that there is insufficient evidence to support his convictions because the heroin he allegedly possessed was neither recovered nor analyzed. We disagree.

{¶ 43} "[C]ourts have held that the government may establish the identity of a drug through cumulative circumstantial evidence." *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir.1988) (stating that "[t]o our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule"). In fact, the Ohio Supreme Court recently reiterated that the state can establish any element of a crime through circumstantial evidence. *Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449, ¶ 27 (holding that the

- 16 -

rule articulated in *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, that a person cannot be convicted as a major drug offender unless the substance offered to sell contains a detectable amount of drug, does not apply when the drug is not recovered).

{¶ 44} The government need only produce "sufficient evidence, direct or circumstantial, from which the [trier of fact] is able to identify the substance beyond a reasonable doubt[.]" *Schrock* at 334. "The experience and knowledge of a * * * lay witness can establish his * * * competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established." *State v. Cox*, 12th Dist. No. CA2008-03-028, 2009-Ohio-928, ¶ 46, quoting *State v. McKee*, 91 Ohio St.3d 292, 297 (2001). Furthermore, a police officer's lay opinion regarding the identity of a substance is admissible based on his or her experience and training. *Cox* at ¶ 46. *See State v. Fox*, 4th Dist. No. 03 CA 63, 2004-Ohio-6972 (finding that the testimony of the officer stating that the "folded and bundled" papers on the driver's side floorboard contained heroin admissible); *State v. Vogel*, 3d Dist. No. 3-05-10, 2005-Ohio-5757 (the officers' testimony regarding the identity of anhydrous ammonia solely based on their observation was admissible due to their education, experience, and training dealing with the chemical). Such lay witness opinion testimony is permissible as scientific testing is not always available because illegal drugs, by their nature, are sold or consumed. *State v. Mielke*, 12th Dist. No. CA2012-08-079, 2013-Ohio-1612, ¶ 41. However, when no foundation is laid for lay testimony and there is no scientific evidence, there is a lack of sufficient evidence for a drug conviction. *See, e.g., State v. Jack*, 3d Dist. No. 9-11-59, 2012-Ohio-2131.

{¶ 45} R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Furthermore, R.C. 2925.11(C) provides: "Whoever violates division (A) of this section is guilty of one of the following: * * * If the amount of the drug involved * * * equals or exceeds ten grams but is less than fifty grams,

- 17 -

possession of heroin is a felony of the second degree * * *."

{¶ 46} In the present case, Officer Sorbello testified that he has been assigned to the Clermont County Narcotics Unit as a part of the drug task force for the past 17 years. He has logged approximately 1,500 hours of training involving narcotics investigation. Additionally, he has handled over 1,000 drug cases in his career, approximately 200 of which dealt specifically with heroin. Regarding the August 9, 2011 transaction, Officer Sorbello testified that co-defendant "produced a bag - - - a sandwich bag size baggie which contained a lot of what we call balloons of heroin." Officer Sorbello then testified regarding how heroin is packaged: "And they're approximately marble sized, and it is heroin that is packaged inside of a balloon. And they cut it off, and they put them in that bag and this is how they are distributed. * * * They're commonly packaged in half to one gram quantities. " Regarding the number of balloons, Officer Sorbello testified that "[w]hen I looked at it I would conservatively - - conservatively there were at least 20 of them in there if not more, " including "one-gram balloons" and "half-gram balloons." Officer Sorbello purchased a total of three balloons. The two balloons that were tested contained approximately one gram of heroin. Officer Sorbello surmised that the third balloon contained approximately one-half gram of heroin. Regarding the August 12, 2011 transaction, Officer Sorbello testified that a similar bag was produced. "Again, the same thing, sandwich-sized bag and it had numerous balloons, at least 20 different color, size again - - - the round gram, half-gram balloons." On this date, Officer Sorbello purchased two balloons. Both tested positive for heroin and weighed approximately one gram each.

{¶ 47} Officer Zint testified that he is a police officer in Union Township assigned to the Clermont County Narcotics Unit, where he has been for nine years. Officer Zint possesses over 1,000 hours of specialized narcotics training and has been undercover "hundreds" of times regarding narcotics or vice related matters. Officer Zint testified that he purchased two

balloons each containing one gram of heroin, confirmed through testing, from appellant and co-defendant on August 30, 2011. Officer Zint testified that co-defendant motioned to appellant who was sitting in the backseat of a vehicle. Then, appellant pulled out a clear plastic sandwich bag with balloons from underneath his leg and randomly selected two balloons. Officer Zint testified that the bag contained "dozens" of balloons. Furthermore, when asked, Officer Zint confirmed that there were more than 20 balloons contained in the bag.

{¶ 48} Given the officers' training and experience dealing with drug transactions, including specifically with heroin, testimony regarding the packaging, size, and typical amount of heroin provides circumstantial evidence that the balloons remaining in the bag contained heroin. Assuming even if the remainder of balloons contained half-gram quantities, with the conservative estimate of 20 balloons in each bag, the amount remaining is at least 10 grams. In addition, six of the seven balloons sold to the officers were tested, and all six tested positive for heroin. When weighed, they were in one-gram quantities. These facts provide additional circumstantial evidence that the balloons remaining in the bags contained heroin on three occasions. Because circumstantial evidence has the same probative value as direct evidence and when viewing the facts in a light most favorable to the prosecution, there is sufficient evidence to sustain appellant's conviction of possession of heroin in an amount greater than 10 grams but less than 50 grams on three separate occasions, assuming they are not subject to merger.

{¶ 49} Appellant argues that the case relied upon by the trial court, *State v. Holt*, 3d Dist. No. 9-09-39, 2010-Ohio-2298, does not support his possession of heroin convictions. In *Holt*, the Third District held that testing a random sample of contraband that is recovered together and similarly packaged creates a reasonable inference that all similar contraband contains the same substance. *Id.* at ¶ 52. In the case at bar, the trial court stated that even

though the small plastic bags filled with 20 or so multicolored balloons were never recovered, there was circumstantial evidence to support the possession convictions because of the testing of the "sample" (i.e., the balloons sold to the undercover officers). As discussed above, regardless of the proper application of *Holt*, there is sufficient circumstantial evidence to convict appellant of possession of heroin on three occasions. Appellant's fourth assignment of error is overruled.

{¶ 50} Assignment of Error No. 5:

{¶ 51} THE TRIAL COURT IMPROPERLY CONVICTED APPELLANT OF ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, AS SET FORTH IN COUNT EIGHT OF THE INDICTMENT, BASED ON THE ACTUAL TRIAL EVIDENCE.

{¶ 52} Appellant argues that there was insufficient evidence before the trial court to sustain appellant's conviction of count eight, pursuant to R.C. 2923.32(A)(1), where the alleged enterprise consisted of only two individuals. Appellant specifically argues that the enterprise lacked a purpose, relationships associated with the enterprise, and longevity. We disagree.

{¶ 53} R.C. 2923.32(A)(1), regarding engaging in a pattern of corrupt activity, states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." "'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C).

{¶ 54} Appellant correctly states that in order to have an association-in-fact enterprise, which is utilized in the R.C. 2923.31(C) definition of "enterprise," there must be "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit

these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 938, 129 S.Ct. 2237 (2009); *State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, ¶ 20. Furthermore, while "enterprise" is a separate element from "pattern of corrupt activity" that must be proved beyond a reasonable doubt, such a requirement does not mean that the existence of an enterprise may not be inferred from the evidence indicating associates engaged in a pattern of corrupt activity. *Boyle* at 938.

{¶ 55} In this case, appellant and co-defendant had a purpose to sell heroin on at least three separate occasions as evidenced by the undercover transactions on August 9, 2011, August 12, 2011, and August 30, 2011. Relationships were formed with each other to carry out the purpose of selling heroin. In addition, Officer Sorbello testified that after appellant and co-defendant conversed regarding the selling prices for the heroin, co-defendant stated that they would have to check with their bosses to negotiate price further. Finally, the transactions transpired over the course of a month, indicating some longevity. Consequently, we find that a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find appellant engaged in a pattern of corrupt activity beyond a reasonable doubt. *See Dodson*; *State v. Humphrey*, 2d Dist. No. 02CA0025, 2003-Ohio-2825. Appellant's fifth assignment of error is overruled.

{¶ 56} Assignment of Error No. 6:

{¶ 57} THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT MERGING TOGETHER THE THREE POSSESSION CHARGES, THE THREE TRAFFICKING CHARGES, AND IN NOT MERGING TOGETHER THE TRAFFICKING, POSSESSION, AND ENGAGING IN A PATTER OF CORRUPT ACTIVITY CHARGES, BASED ON THE ACTUAL TRIAL EVIDENCE.

{¶ 58} Appellant asserts that the trial court erred as a matter of law in not merging the three possession charges with each other and the three trafficking charges with each other.

Specifically, appellant argues that the descriptions of mixed color, different color, and blue and green balloons are too similar to be differentiated for purposes of finding different balloons were involved in each transaction. Appellant further argues that his convictions of trafficking, possession, and engaging in a pattern of corrupt activity should have merged.

{¶ 59} At the trial court level, appellant argued that the possession charges should merge with one another and that the trafficking charges should merge with one another. However appellant admits that the issue of whether the possession, trafficking, and engaging in a pattern of corrupt activity charges should all be merged was not raised at the trial court level. When a trial court makes a determination as to whether offenses should merge under R.C. 2941.25, we are to review that decision under a de novo standard. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. Consequently, we review whether the possession and trafficking charges should merge with one another without deference to the trial court's determination.

{¶ 60} With respect to merger of the possession, trafficking, and engaging in a pattern of corrupt activity, by failing to argue for merger of these convictions at the trial court below, appellant has waived all but plain error regarding these issues. *See State v. Seymore*, 12th Dist. No. CA2011-07-131, 2012-Ohio-3125; *State v. Sidibeh,* 10th Dist. No. 10AP-331, 2011-Ohio-712, ¶ 55. Plain error exists where there is an obvious deviation from a legal rule that affected the outcome of the proceeding. Crim.R. 52(B); *State v. Blanda*, 12th Dist. No. CA2010-03-050, 2011-Ohio-411, ¶ 20, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). In regard to sentencing, the imposition of multiple sentences for allied offenses of similar import amounts to plain error, whether ordered to be served consecutively or concurrently. *Seymore* at ¶ 18, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 61} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court established a two-part test to determine whether offenses are allied offenses of similar

import under R.C. 2941.25. *State v. Craycraft*, 12th Dist. Nos. CA2009-02-013 and CA2009-02-014, 2011-Ohio-413, ¶ 11. Courts must first determine whether it is possible to commit one offense and commit the other with the same conduct. *Johnson* at ¶ 48; *State v. McCullough*, 12th Dist. Nos. CA2010-04-006 and CA2010-04-008, 2011-Ohio-992, ¶ 14. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other, but instead, the question is simply whether it is possible for both offenses to be committed by the same conduct. *Johnson* at ¶ 48; *Craycraft* at ¶ 11.

{¶ 62} If it is found that the offenses can be committed by the same conduct, the court must then determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If both questions are answered in the affirmative, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50; *State v. Roy*, 12th Dist. No. CA2009-11-290, 2011-Ohio-1992, ¶ 11. However, if the commission of one offense will *never* result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶ 51; *Craycraft* at ¶ 11-12; *Roy* at ¶ 11.

{¶ 63} First, we address whether the trafficking charges should merge with the possession charges. To be guilty of trafficking under R.C. 2925.03(A)(1), the offender must knowingly "[s]ell or offer to sell a controlled substance." To be guilty of possession under R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance." In turn, while the offender need not possess the controlled substance in order to sell it, nor does the offender need to intend to sell the controlled substance in order to possess it, it is certainly possible for both offenses to be committed with the same conduct.

- 23 -

*State v. Roy*, 12th Dist. No. CA2009-11-290, 2011-Ohio-1992, ¶ 13.

{¶ 64} We find that trafficking and possession can be committed by the same conduct. Now, we must determine whether they were committed with the same conduct, with a single act and single state of mind. On each occasion, appellant and co-defendant possessed at least 20 heroin balloons contained in a clear plastic sandwich bag. On each occasion, appellant and co-defendant only sold two or three balloons to the undercover officers. On all three dates, appellant and co-defendant still possessed the remainder of the balloons, constituting a separate act with a different animus. *See State v. Williams*, 5th Dist. No. 2012-CA-34, 2012-Ohio-4708. Consequently, the possession and trafficking offenses should not merge.

{¶ 65} Second, we address whether the trafficking charges should have merged with one another. Appellant was charged with three counts of trafficking in heroin. It is possible to commit multiple trafficking counts with the same conduct as all of the violations involve the same offense. However, trafficking in this case occurred on three different dates and involved three separate transactions. At each transaction, the buy was prearranged and appellant and co-defendant sold different balloons of heroin. On all three occasions, separate balloons were recovered and scientifically analyzed. Consequently, we find that the three trafficking in heroin offenses were committed separately and should not merge.

{¶ 66} Third, we address whether the three possession charges should merge. It is certainly possible to commit several counts of possession by the same conduct as they involve the same offense. The question is whether the three possession offenses were committed by the same conduct. We find that the balloons possessed on August 9, 2011 and August 12, 2011 were possessed with the same conduct. Testimony of Officer Sorbello indicated that on the first two occasions the clear plastic sandwich bag contained "mixed" color or "different" color balloons. Consequently, it is impossible to differentiate between the

- 24 -

balloons possessed following the August 9, 2011 transaction and the balloons possessed following the August 12, 2011 transaction. Appellant's possession of heroin on both dates was the same product and the same quantity. The trial court correctly merged these two instances of possession.

{¶ 67} We also find that the trial court correctly found that the August 30, 2011 possession charge should not be merged with the first two possession charges based upon the evidence established at trial. In the first two counts, different colored balloons were present in the clear bag including red and yellow balloons, colors which were not present in the third count. The dissent construes Officer Zint's testimony regarding the color of the balloons in the August 30 count as too indeterminate. We find otherwise. Early in his direct testimony, Officer Zint initially stated that a clear plastic bag was produced and "It had blue and green balloons in it." Then later, the state re-addressed the color of the balloons during direct examination as follows: "Q. Okay. And you said it was a mixture of blue and green balloons? A. Those were the two colors that I remember seeing in the bag were that they were blue and green." Based upon Officer Zint's description of the color of the balloons in his testimony, we find that there was sufficient evidence for the trier of fact to determine that only blue and green balloons were involved in the August 30 possession charge. Therefore, because circumstantial evidence established that the heroin possessed on August 30, 2011 was different from the heroin possessed in the first two transactions, different conduct was involved and the August 30 count should not be merged with the other two counts.

{¶ 68} Last, we address whether possession of heroin and trafficking in heroin are allied offenses with engaging in a pattern of corrupt activity. We have previously found that it is possible to commit engaging in a pattern of corrupt activity and trafficking in drugs by the same conduct. *See State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, ¶ 66. Similarly, it seems quite possible to commit possession of heroin and engaging in a pattern of

corrupt activity with the same conduct.

{¶ 69} Our inquiry turns on whether the offenses were committed by the same conduct in this case. In *Dodson*, we held that engaging in pattern of corrupt activity requires an additional state of mind from trafficking in drugs. *Id.* As stated above, in the case at bar, appellant had an additional intent from possession of heroin and trafficking in heroin to form an enterprise. Relationships were formed to carry out the purpose of selling heroin with appellant, co-defendant, and their bosses. The transactions transpired over the course of a month, indicating some longevity.

{¶ 70} When looking at the intent of the General Assembly, R.C. 2923.32 was enacted to criminalize the pattern of criminal activity, not the underlying predicate acts. *Dodson* at ¶ 68, citing *State v. Dudas*, 11th Dist. Nos. 2008-L-109, 2008-L-110, 2009-Ohio-1001, ¶ 47. This intent is further reinforced by the purpose articulated in the federal RICO statute, which R.C. 2923.31 et seq. is patterned after. *Id.*, citing *State v. Thrower*, 62 Ohio App.3d 359, 369 (9th Dist.1989). The purpose of the federal RICO statute includes "providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." *Thrower* at 377, citing Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922-23, reprinted in [1970] U.S. Code Cong. & Admin. News, at 1073. This purpose is furthered by not merging possession of heroin and trafficking in heroin with engaging in a pattern of corrupt activity in order to provide an enhanced sanction.

{¶ 71} Given the separate animi for possession of heroin, trafficking in heroin, and engaging in a pattern of corrupt activity and considering the intent of the General Assembly in the enactment of R.C. 2923.32, under the facts and circumstances of this case, we find that possession of heroin and trafficking in heroin are not allied offenses with engaging in a pattern of corrupt activity subject to merger under *Johnson.*

{¶ 72} Therefore, because the trial court did not err in determining which offenses are

allied offenses of similar import, appellant's sixth assignment of error is overruled.

{¶ 73} Judgment affirmed.

S. POWELL J., concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J., concurring in part and dissenting in part.**

{¶ 74} I concur with the majority's opinion as it relates to appellant's first, second, third, fourth, and fifth assignments of error. However, I must concur in part and dissent in part with the majority's judgment overruling appellant's sixth assignment of error regarding the merger of allied offenses. I agree that the trafficking, possession, and engaging in a pattern of corrupt activity charges should not be merged but, contrary to the majority's conclusion, I believe that based upon the evidence all three possession charges must be merged.

{¶ 75} The majority correctly applies the first prong of analysis for merging allied offenses of similar import under the *Johnson* test: it was certainly possible to commit all three possession offenses with the same conduct. However, I do not agree with the manner in which the majority uses assumptions to answer the second prong of the *Johnson* test in the negative. Based upon the respective descriptions offered by the two officers of the color of the heroin balloons in appellant's possession at the time of the drug transactions, the majority found that appellant's conduct in possessing heroin in the first two possession charges is not the same as in the third possession charge. Yet the testimony of the two officers does not establish a separate and distinct act of possession in the third instance.

{¶ 76} Officer Sorbello conducted the buys in the first two transactions. In response to a question about the bag of heroin balloons that appellant possessed during the first transaction, he described the balloons as "all different colors * * * [not] just a bag of red

balloons * * * [and not] just a bag of yellow balloons. It was a mixed color of them." This testimony was primarily negative; Officer Sorbello stated that the balloons in the bag were not all red and not all yellow. He *did not* assert that the balloons were *only* red and yellow. There is nothing in Officer Sorbello's testimony to support the majority's contention that there were no blue and green balloons in the bag.

{¶ 77} Officer Sorbello also stated that appellant possessed a bag of heroin balloons during the second transaction, but he indicated only that they were "the same thing * * * different color * * * balloons." There was no further discussion of color either on direct or cross-examination. Again, there is nothing in this testimony that negates the presence of blue and green balloons.

{¶ 78} The buy in the third transaction was conducted by Officer Zint. When asked on direct examination about the bag of heroin balloons appellant possessed during the third transaction, Officer Zint responded that "[i]t had blue and green balloons in it," and he noted that he received "two blue ones." Later in the direct examination, he was asked a leading question: "you said it was a mixture of blue and green balloons?" Officer Zint responded vaguely: "[t]hose were the two colors that I remember seeing in the bag were that they were blue and green." There was no further discussion of color on direct or cross-examination. From this testimony the majority assumes that Officer Zint meant that there were *only* two colors of balloons in the third transaction. No such testimony exists.

{¶ 79} Officer Zint's testimony that he remembers seeing "blue and green" balloons is not different than Officer's Sorbello's testimony that they were "all different colors." The majority infers that Officer Sorbello's description of "all different colors" does not include blue and green, and it infers from Officer Zint's testimony that his recollection of "blue and green" balloons is necessarily exclusive of other colors. That is, the majority infers that the testimony of the two officers provides completely different descriptions of the balloons. From

this inference, the majority further infers that the heroin possessed and retained by appellant after the third transaction is different than the heroin retained after the first two transactions. This is an inference upon an inference, which is impermissible. *See State v. Cooper*, 147 Ohio App. 3d 116, 126 (12th Dist.2002), citing *State v. Cowans*, 87 Ohio St.3d 68, 78 (1999).

**{¶ 80}** We have testimony from two officers putting the quantity of drugs in appellant's possession during the three transactions as between 12 and 20 balloons. The evidence as to the color of balloons is also not disparate. If the majority merges the first two possessions, we must merge the third possession as well. Therefore, all three counts of possession must be merged as allied offenses of similar import. In this regard I would vacate the sentence as to Count Six, and find appellant's sixth assignment of error to be well-taken.